[Cite as *State v. Neal*, 2016-Ohio-1406.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                     :

      Plaintiff-Appellee,                    :

                                   No. 15AP-771

v.                                                :         (C.P.C. No. 14CR-3590)

Antonio L. Neal,                                  :        (REGULAR CALENDAR)

      Defendant-Appellant.                   :

---

D E C I S I O N

Rendered on March 31, 2016

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Yeura R. Venters*, Public Defender, and *David L. Strait*, for appellant. **Argued:** *David L. Strait.*

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Antonio L. Neal, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of having a weapon while under disability, in violation of R.C. 2923.13, and improper handling of a firearm, in violation of R.C. 2913.16. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 13, 2014, Columbus Police Officer Jacob Pawlowski and his partner, Officer Demsas Reddae, stopped appellant's vehicle for failing to maintain a lane of travel at the intersection of Joyce Avenue and Maynard Avenue. As Officer Pawlowski approached the vehicle, he noticed there were two passengers in the vehicle with appellant. Officer Pawlowski asked appellant for his license, vehicle registration, and

proof of insurance. The time was 8:31 p.m. Officer Pawlowski then asked appellant for permission to search the vehicle, but appellant refused.

{¶ 3} Appellant's refusal raised "red flags" with Officer Pawlowski. (Nov. 25, 2014 Tr. 9.) Although Officer Pawlowski acknowledged he did not have a reasonable suspicion that appellant or his passengers were engaged in other criminal activity, he decided to call for a K-9 unit. The time was 8:37 p.m. At 8:48 p.m., Officer Kenneth Coontz of the K-9 unit arrived at the scene with his drug detection dog.[1] In accordance with his usual procedure, Officer Coontz ordered appellant and his passengers out of the vehicle before he led his dog around the outside of the vehicle. According to Officer Coontz, less than one minute after he began walking his dog around the vehicle, his dog "alerted" to the rear passenger compartment by scratching at the door. (Nov. 25, 2014 Tr. 44.) When Officer Coontz notified appellant of this development, appellant admitted that one of his passengers had smoked marijuana in the vehicle.

{¶ 4} A subsequent search of the interior of the vehicle uncovered a residue of marijuana which was insufficient to support a minor misdemeanor charge. However, police also found a handgun in the glove box. Officer Pawlowski cited appellant for a marked lane violation, a minor misdemeanor, and he turned the weapon over to the gun crimes unit. On July 18, 2014, a Franklin County Grand Jury indicted appellant on one count of having a weapon while under disability, a felony of the third degree, and one count of improper handling of a firearm in a vehicle, a felony of the fourth degree.

{¶ 5} On September 18, 2014, appellant filed a motion to suppress the evidence uncovered in the warrantless search of his vehicle. The trial court held an evidentiary hearing on the motion on November 25, 2014. On February 13, 2015, the trial court issued a written decision denying appellant's motion. On April 7, 2015, appellant entered a plea of no contest to the charges in the indictment. The trial court convicted appellant of both charges in the indictment and scheduled a sentencing hearing for July 9, 2015. As a result of the hearing, the trial court issued a judgment entry on July 13, 2015, imposing three years of community control. Appellant timely appealed to this court from the judgment of the trial court.

---

[1] An "Event Chronology" was admitted into evidence as exhibit A-2.

## II. ASSIGNMENT OF ERROR

{¶ 6}   Appellant asserts a single assignment of error as follows:

> The trial court erred by overruling the defense motion to suppress the results of a search that was conducted in violation of Appellant's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14.

## III.  STANDARD OF REVIEW

{¶ 7}   "Appellate review of a motion to suppress presents a mixed question of law and fact."   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.   "When considering a motion to suppress, the trial court assumes the role of fact finder and, accordingly, is in the best position to resolve factual questions and evaluate witness credibility."   *Columbus v. Body*, 10th Dist. No. 11AP-609, 2012-Ohio-379, ¶ 9, citing *Burnside* at ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).   "As such, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence."   *Id.*, citing *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).   "Accepting these facts as true, the reviewing court must then independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard."   *Id.*, citing *Burnside* at ¶ 8.   *See also State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 6.

## IV.  LEGAL ANALYSIS

{¶ 8}   Appellant's sole assignment of error challenges the denial of his motion to suppress evidence seized by police in the traffic stop of June 13, 2014.   Specifically, appellant claims that officers detained him beyond the time justified by the traffic stop in violation of his rights under the Fourth Amendment to the U.S. Constitution.

{¶ 9}   In denying the motion to suppress, the trial court held that the Fourth Amendment does not require an officer to possess a reasonable articulable suspicion of criminal activity, beyond the minor misdemeanor traffic offense, before calling for the aid of a drug sniffing dog.   The trial court further determined that Officer Pawlowski did not extended appellant's detention beyond that which was reasonably necessary to resolve the issue that led to the stop and issue a traffic citation.   We agree with the trial court.

{¶ 10} When a police officer stops an automobile, thus temporarily detaining its occupants, a seizure has occurred under the Fourth Amendment to the U.S. Constitution. *Phillips* at ¶ 16, quoting *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 17, citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "Further, 'the seizure of a person without the authority of a warrant is per se unreasonable, and therefore unconstitutional, unless an exception applies.' " *Id.*, quoting *Dorsey* at ¶ 17, citing *Katz v. United States*, 389 U.S. 347, 357 (1967). " 'One such exception is commonly known as an investigative or *Terry* stop.' " *Id.*, quoting *Dorsey* at ¶ 17, citing *Terry v. Ohio*, 392 U.S. 1 (1968).

{¶ 11} In the context of automobile seizures, the *Terry* exception permits a police officer to stop an individual if the officer, based on specific and articulable facts, has reasonable suspicion of criminal activity. *Id.* at ¶ 17, citing *Dorsey* at ¶ 18, citing *Terry*. " 'No warrant is required to initiate a traffic stop if the police officer harbors a reasonable suspicion that a driver has violated a traffic law.' " *Id.*, quoting *Dorsey* at ¶ 18, citing *Columbus v. Stanley*, 10th Dist. No. 00AP-1128 (June 28, 2001). "However, 'a traffic stop must comply with the Fourth Amendment's general reasonableness requirement.' " *Id.* at ¶ 18, quoting *State v. Aguirre*, 4th Dist. No. 03CA5, 2003-Ohio-4909, ¶ 33, citing *Whren v. United States*, 517 U.S. 806, 809 (1996). " 'The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." ' " *Id.*, quoting *Aguirre* at ¶ 35, quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983).

{¶ 12} " 'When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates.' " *Id.* at ¶ 19, quoting *Aguirre* at ¶ 36, citing *State v. Carlson*, 102 Ohio App.3d 585, 598 (9th Dist.1995). " ' "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." ' " *Id.*, quoting *Aguirre* at ¶ 36, quoting *Carlson* at 598.

{¶ 13} Ordinarily, " '[a] canine sniff by a drug detection dog of the exterior of a vehicle lawfully detained for a traffic stop does not implicate Fourth Amendment rights.' "

*Id.* at ¶ 20, quoting *State v. Greene*, 2d Dist. No. 25577, 2013-Ohio-4516, ¶ 22, citing *Illinois v. Caballes*, 543 U.S. 405 (2005). " 'Police are not required to have reasonable suspicion that a vehicle contains drugs prior to conducting a canine sniff of the vehicle during a traffic stop, so long as the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the issue that led to the stop and issue a traffic citation.' " *Id.*, quoting *Greene* at ¶ 22, citing *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535 (2d Dist.). " 'If, however, the duration of the traffic stop is extended in order to bring a drug sniffing dog to the scene, police must have a reasonable suspicion that the vehicle contains drugs in order to justify the continued detention.' " *Id.*, quoting *Greene* at ¶ 22, citing *Ramos*, citing *State v. Kuralt*, 2d Dist. No. 20532, 2005-Ohio-4529, ¶ 10-11.

{¶ 14} At the suppression hearing, Officer Pawlowski testified that the intersection in question is in a high crime area, and it was his standard practice to ask for permission to search a vehicle during a traffic stop. He also testified that he calls the K-9 unit upon a refusal "[m]ost of the time." (Nov. 25, 2014 Tr. 29.) Officer Pawlowski testified that in accordance with "general procedure and protocol," his partner obtained identification from appellant and his two passengers for the purpose of conducting a records check. (Nov. 25, 2014 Tr. 24.) At the suppression hearing, appellant argued that Officer Pawlowski illegally extended the duration of the traffic stop until the K-9 unit arrived.

{¶ 15} The two leading cases on the issues raised in this appeal are the United States Supreme Court decision in *Rodriguez v. United States*, ___ U.S. ___, 135 S.Ct. 1609, 1615 (2015), and the decision of this court in *Phillips*. In *Rodriguez*, Morgan Struble, an officer in the K-9 unit, stopped Rodriguez for driving his vehicle on a highway shoulder. Officer Struble collected Rodriguez's license, registration, and proof of insurance. After checking for warrants on Rodriguez, Officer Struble asked the passenger for his driver's license and began to question him about where the two men were coming from and their destination. Officer Struble returned to his cruiser where he conducted a records check on the passenger. When the records check revealed no outstanding warrants, Officer Struble returned the documents he had collected and issued a written warning to Rodriguez.

{¶ 16} It was at that point in time when Officer Strubel asked Rodriguez for permission to walk his drug detection dog around the vehicle. When the defendant

refused, Officer Struble detained him until backup arrived. After a second officer arrived, Officer Struble walked his dog around the vehicle. When the dog alerted to the presence of drugs, the officers searched the vehicle and recovered illegal drugs. Just seven or eight minutes had elapsed from the time Officer Struble issued the warning to the time the dog alerted. *Id.* at 1610.

{¶ 17} The district court subsequently denied Rodriguez's motion to suppress and the Eighth Circuit affirmed. The United Stated Supreme Court granted certiorari. In the majority opinion, the United States Supreme Court noted that in determining the reasonableness of a traffic stop, courts must examine the totality of the circumstances to ascertain if the police diligently pursued the investigation into the purpose for the stop. *Id.* The United States Supreme Court also noted that inquiries incident to a typical traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 1615.

{¶ 18} The United States Supreme Court determined that the Fourth Amendment does not prohibit certain unrelated investigative activities during the course of a traffic stop, such as the use of a K-9 unit, so long as they do not extend the duration of the detention. *Id.* at 1611, citing *Caballe*s at 406. The United States Supreme Court recognized, however, that "a traffic stop 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Id.*, quoting *Caballes* at 407. The United States Supreme Court emphasized that "the critical question * * * is not whether the dog sniff occurs before or after the officer issues a ticket, * * * but whether conducting the sniff * * * adds time to the stop." (Citations omitted.) *Id.* at 1616. The majority in *Rodriguez* concluded that because the officer had completed the purpose of the traffic stop when he issued the written warning to Rodriguez, the Fourth Amendment prohibited further detention for the dog sniff unless the officer had a reasonable suspicion that the occupants had been involved in other illegal activity. *Id.*[2]

---

[2] The United States Supreme Court reversed the decision of the Eight Circuit and remanded the case for the appeals court to consider whether Officer Struble had a reasonable suspicion that the occupants had been involved in other illegal activity. *Id.* at 1616-17.

{¶ 19} In *Phillips*, this court reviewed a trial court's denial of a motion to suppress under nearly the same set of facts presented herein. At approximately 1:26 a.m., Officer Clayton Adams observed a vehicle with a malfunctioning rear license plate light. After checking the vehicle's license plate number through LEADS and confirming Phillips was the vehicle's owner, Officer Adams initiated a traffic stop. Officer Adams obtained identification from both Phillips and the driver. Officer Adams returned to his cruiser and initiated a records check to determine the validity of the identifications and whether either of the occupants had outstanding warrants. While the dispatcher conducted the records check, Officer Adams asked the occupants for permission to search the vehicle, but they refused. When the records check revealed no outstanding warrants, Officer Adams began writing a traffic citation for the driver.

{¶ 20} At approximately 1:33 a.m., Officer Adams requested a K-9 unit to the scene. While awaiting the arrival of the canine unit, Officer Adams continued writing the traffic citation. The canine unit arrived at the scene at 1:41 a.m., before Officer Adams had completed the traffic citation. The drug detection dog began to circle the vehicle and immediately alerted to the passenger side door. A subsequent search of the vehicle revealed a small quantity of drugs and drug paraphernalia. Officer Adams arrested Phillips and issued a traffic citation to the driver.

{¶ 21} In his motion to suppress, Phillips argued that "the traffic stop was unlawfully prolonged because it lasted longer than was reasonably necessary to identify the occupants of the vehicle, determine if they had any outstanding arrest warrants, and issue the citation for the traffic violation." *Id.* at ¶ 14. In rejecting this argument on appeal, this court held as follows:

> In the present case, after evaluating the duration of the stop in light of the totality of the circumstances and considering whether Adams diligently conducted his investigation, we conclude the evidence supports the trial court's finding that the traffic stop was not unlawfully prolonged. The canine sniff occurred before Adams completed writing his citation and only 15 minutes after the traffic stop began, within the normal time for processing and issuing a traffic citation for a malfunctioning license plate light. There is no evidence that the traffic stop for that violation was extended by or for the purpose of the canine sniff. Less than 20 minutes elapsed

> from the initial stop to the canine alerting to the vehicle. Once the canine alerted to the scent of drugs in the vehicle, police had probable cause to search the vehicle and appellant's person. * * * Accordingly, we find that appellant's Fourth Amendment rights were not violated and the trial court properly overruled his motion to suppress the evidence obtained as a result of the traffic stop.

*Id.* at ¶ 21.

{¶ 22} Applying the logic of *Rodriguez* and *Phillips* to the facts of this case leads us to the conclusion that Officer Pawlowski did not extend the duration of the traffic stop beyond what was reasonably necessary to resolve the issue that led to the stop and issue a traffic citation. In *Rodriguez*, there was no question that the officer resolved the issue that led to the initial traffic stop before asking for permission to employ the drug sniffing dog. Here, the testimony of Officer Coontz established that when he arrived at the scene with his dog, Officer Pawlowski was standing outside appellant's vehicle while his partner was sitting in his cruiser writing something. Thus, the record contains competent credible evidence that Officer Pawlowski did not extend the duration of the traffic stop beyond what was reasonably necessary to issue a traffic citation. Similarly, in *Phillips*, less than 20 minutes elapsed from the initial stop to the dog alerting to the vehicle. Here, the evidence supports a finding that Officer Coontz arrived at the scene 17 minutes after Officer Pawlowski stopped appellant's vehicle and that Officer Reddae was still writing the citation upon Officer Coontz's arrival. Officer Coontz's dog alerted to the scent of narcotics less than one minute after Officer Coontz began walking the dog around the vehicle.

{¶ 23} In the absence of some evidence that the normal procedures were delayed for reasons unrelated to the investigation of the traffic violation, the only reasonable conclusion to draw from the evidence is that the length of appellant's detention was no longer than was necessary to investigate the traffic violation and issue the ticket. *Id.*; *Rodriguez.* There is no evidence in this case that Officer Pawlowski did not follow the normal procedures or that he or his partner failed to diligently perform those procedures during this traffic stop.

{¶ 24} The trial court in this case, citing this court's decision in *Phillips*, found as follows:

> In Phillips the time from stop to the dog sniff was 15 minutes. Herein the time was 17 minutes. Of[ficer] Pawlo[w]ski testified that it usually took him 20 to 25 minutes to conduct a traffic stop and run all the necessary checks and write the citation.
>
> As the duration of the stop in light of the totality of the circumstances was not unreasonable the court finds that the search was not improper and the evidence should not be suppressed.

(Feb. 13, 2015 Entry Denying Motion to Suppress, 4.)

{¶ 25} Appellant argues that the trial court erred when it relied on Officer Pawlowski's testimony that it usually takes him 20 to 25 minutes to complete a traffic stop like the one he conducted in this case given his testimony on cross-examination that it takes 5 to 10 minutes to issue a traffic citation. On cross-examination, Officer Pawlowski testified as follows:

> Q. When you make a traffic stop for a minor traffic violation, how long does it normally take to issue a traffic citation?
>
> A. Five minutes, ten minutes.
>
> Q. And how long does it normally take, based upon your experience again, when you call for a dog unit or K-9 unit, how long -- what's the average response time, would you say, based upon your experience?
>
> A. Ten to fifteen.
>
> Q. So it takes a little longer than your normal traffic stop; correct?
>
> A. I mean, normal -- I mean, no, there's no normal traffic stop. Every traffic stop --
>
> Q. I understand that. But, I mean, the fact that the only reason you called the dog was because he refused the search of the car?
>
> A. Yep.

(Nov. 25, 2014 Tr. 33-34.)

{¶ 26} On re-direct examination, the following exchange took place:

Q. Officer, [defendant's counsel] asked you about how long it takes to issue a traffic citation. You said about five to ten minutes; correct?

A. Correct.

Q. Okay. What about, how much time do you think it would take to do the warrant check you stated before over the radio, maybe over the computer, how long does that take?

A. Usually depends how busy the records person is running the warrants, how many occupants you have, things like that.

Q. How many occupants did you have in this car, remind me?

A. Three.

Q. Three people. So you had to run the warrant check on the driver, the passenger, and whoever else was sitting in the back; correct?

A. Correct.

Q. And then I think you mentioned before on direct, other identifying information that you got from them was what?

A. Names, date of birth, social.

Q. That takes a little more time on top of just issuing a citation; correct?

A. Correct.

Q. Altogether with all that stuff, how long do you think, you know, a stop like this normally takes, if there's three people in the car and you're writing out this information for the citation for a marked lane violation?

A. During the summertime it's usually busier; so 20, 25 minutes or longer.

(Nov. 25, 2014 Tr. 35-36.)

{¶ 27} Based on the entirety of Officer Pawlowski's testimony, it is reasonable to conclude that his estimate of "five minutes, ten minutes" relates to the time it takes to write the citation itself, without the attendant records check.  (Nov. 25, 2014 Tr. 34.) Given the more deferential standard of review this court is required to apply in reviewing the trial court's factual findings, we cannot say that the trial court erred when it resolved the alleged inconsistency in Officer Pawlowski's testimony.  Moreover, as the United States Supreme Court noted in *Rodriguez*, the constitutional reasonableness of a detention is not merely a function of the average time it takes an officer to issue a traffic citation or the total time of the traffic stop in question.  *Id.* at 1616.  Rather, the question is whether the duration of the detention extends " 'beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation."  *Id.* at 1612, quoting *Caballes* at 407.  More specifically, "whether conducting the sniff adds time to the stop."  *Id.*

{¶ 28} In this regard, appellant has argued, on appeal, that Officer Pawlowski unreasonably extended appellant's temporary detention until the K-9 unit arrived by running an unnecessary warrants check on appellant's passengers.  Appellant claims that it is constitutionally unreasonable for an officer to obtain identification from vehicle passengers and check for warrants unless the officer has a reasonable suspicion of other criminal conduct beyond the traffic violation.  Appellant relies on this court's decision in *State v. Tabler*, 10th Dist. No. 14AP-386, 2015-Ohio-2651, as support for his argument.

{¶ 29} We note that the *Tabler* case does not involve a traffic stop, and it is, therefore, distinguishable from this case.  Moreover, appellant did not make this argument either in his written motion to suppress or in his closing argument at the suppression hearing.  In his written motion to suppress, appellant states: "The officers were admittedly well within the limits of the Constitution in stopping [appellant], performing routine questioning, *checking the licenses of all passengers in the vehicle*, and issuing a traffic ticket or warning."  (Emphasis added.)  (Sept. 18, 2014 Motion to Suppress, 4.)  "[A] motion to suppress must 'state with particularity the legal and factual issues to be resolved,' thereby placing the prosecutor and court 'on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived.' "  *Columbus v. Ridley*, 10th Dist. No. 15AP-84, 2015-Ohio-4968, ¶ 23, quoting *State v. Shindler*, 70 Ohio St.3d 54, 58 (1994).  Appellant's failure to raise this

particular issue at the suppression hearing constitutes a waiver of the issue for purposes of appeal. *Id.* *See also State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 14 ("by failing to assert it below, appellant has waived the argument that [the] affidavit did not support a finding of probable cause because it failed to disclose the failure rate of the canine that performed the sniff test"); *State v. Taylor*, 10th Dist. No. 12AP-283, 2012-Ohio-6200, ¶ 12 ("defendant did not preserve in his motion to suppress the issue of whether the initial stop was illegal; he argued only that the subsequent search of the vehicle was inappropriate under [*Arizona v.*] *Gant*, [556 U.S. 332 (2009)]").

{¶ 30} For the foregoing reasons, appellant's sole assignment of error is overruled.

## V. CONCLUSION

{¶ 31} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____