[Cite as *State v. Wintermeyer*, 2017-Ohio-5521.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 16AP-381 |
| v. | : | (C.P.C. No. 15CR-5252) |
| Justin W. Wintermeyer, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

### D E C I S I O N

#### Rendered on June 27, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellant. **Argued:** *Seth L. Gilbert*.

**On brief:** *Dustin M. Blake Co., LLC*, and *Dustin M. Blake*, for appellee. **Argued:** *Dustin M. Blake*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals the May 10, 2016 decision and entry of the Franklin County Court of Common Pleas granting the motion to suppress filed by defendant-appellee, Justin W. Wintermeyer. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On October 23, 2015, a Franklin County Grand Jury filed an indictment charging defendant with a single count of possession of heroin, in violation of R.C. 2925.11, a felony of the fifth degree.

{¶ 3} On February 15, 2016, defendant filed a motion to suppress evidence. On February 22, 2016, the state filed a memorandum contra defendant's motion to suppress evidence. On April 5, 2016, the trial court held a hearing on defendant's motion to

suppress. At the suppression hearing, Officer Ryan Wise of the Columbus Division of Police provided unopposed testimony as the sole witness called by the state.

{¶ 4}   Officer Wise testified that on March 8, 2014, he was working patrol from 7 p.m. to 5 a.m. on the west side of Columbus. On that evening, he was dispatched to investigate a report that a vacant residence had an open window and may have been burglarized. Officer Wise met Officer Brad Foulk at the residence. The officers found an open window in the rear of the residence but were unable to gain entrance through the window. While they waited for someone to arrive with a key, Officer Foulk stood in front of the residence and Officer Wise stood behind the residence in the back yard, which abutted on an alley.

{¶ 5}   Around 8:50 p.m., as he was standing in the back yard, Officer Wise heard individuals talking in the alley. Although it was dark, Officer Wise observed two individuals who stopped in the alley directly behind the yard in which Officer Wise was standing. While he was able to observe the individuals in the alley, Officer Wise thought that they did not see him. One of the individuals, later identified as defendant, walked through a back yard on the other side of the alley into a residence while the second individual, who was referred to at the suppression hearing as Mr. Carlson, remained in the alley. After "approximately one to two minutes," defendant exited the residence on the other side of the alley and walked back into the alley. (Tr. at 11.) Officer Wise testified that as soon as defendant entered the alley, he handed something to the other person.

{¶ 6}   Officer Wise testified he was approximately 10 to 15 feet away from where defendant and Carlson were standing in the alley. Based on his observations, Officer Wise thought "they went inside the house and purchased narcotics," followed by "[a]n exchange, hand-to-hand exchange." (Tr. at 12.) Officer Wise proceeded to shine his flashlight on defendant and Carlson and began walking toward them. When he shined his flashlight on them, he saw "a small plastic object" in Carlson's hand. (Tr. at 12.) Officer Wise stated that the object was "a small object, maybe the size of my pinkie there wrapped up in plastic wrap." (Tr. at 13.) Officer Wise also described the item as "a plastic cellophane bag or Saran Wrap." (Tr. at 13.)

{¶ 7}   Officer Wise testified that "[a]s I shined the flashlight and walked up to them I could see the individual was still holding the plastic baggie in his hand. At that

point I reached down and grabbed it and observed it contain[ed] a brown substance, which was consistent with heroin." (Tr. at 14.) Officer Wise then radioed that he had two suspects detained in the alley and requested assistance. Officer Wise testified he detained defendant and Carlson "[a]s soon as I walked up on them and saw the plastic baggie, which I suspected was heroin." (Tr. at 15.) Officer Foulk met Officer Wise in the alley and took the item confiscated by Officer Wise for testing. Officer Foulk reported that he received a positive field test for heroin. At that point, defendant and Carlson were placed under arrest.

{¶ 8}   On April 10, 2016, defendant filed a supplement to his motion to suppress. On May 10, 2016, the trial court filed a decision and entry granting defendant's motion to suppress.

## II.  Assignment of Error

{¶ 9}   The state appeals and assigns the following single assignment of error for our review:

> The trial court committed reversible error in sustaining Wintermeyer's motion to suppress.

## III.  Discussion

{¶ 10} The state argues on appeal that the trial court erred in granting defendant's motion to suppress because he lacks the requisite standing. "[A] motion to suppress must 'state with particularity the legal and factual issues to be resolved,' thereby placing the prosecutor and court 'on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived.' " *Columbus v. Ridley*, 10th Dist. No. 15AP-84, 2015-Ohio-4968, ¶ 23, quoting *State v. Shindler*, 70 Ohio St.3d 54, 58 (1994).  "In general, issues not raised by a party during a suppression hearing cannot be raised for the first time on appeal." *State v. Thomas*, 10th Dist. No. 14AP-185, 2015-Ohio-1778, ¶ 37, citing *State v. Bing*, 134 Ohio App.3d 444, 449 (9th Dist.1999).  Here, the state did not raise the issue of standing at the suppression hearing.  Instead, the state focused its arguments on whether Officer Wise possessed reasonable suspicion or probable cause

to investigate defendant's actions.[1] The state's failure to argue the issue of standing in the trial court constitutes a waiver of such issues for purposes of appeal. *State v. Boyd*, 2d Dist. No. 25182, 2013-Ohio-1067, ¶ 32 (finding the state waived the issue of whether the defendant had standing to challenge the constitutionality of search). *See also ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 16; *State v. Neal*, 10th Dist. No. 15AP-771, 2016-Ohio-1406, ¶ 29; *Clemens v. Nelson Fin. Group, Inc.*, 10th Dist. No. 14AP-537, 2015-Ohio-1232, ¶ 27, citing *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 34 ("Generally, a party waives the right to raise on appeal an argument it could have raised, but did not, in earlier proceedings."); *Ridley* at ¶ 28. *Compare State v. Muldrow*, 10th Dist. No. 15AP-1119, 2016-Ohio-4774, ¶ 20.

## A. Standard of Review

{¶ 11} "The review of a motion to suppress is a mixed question of law and fact." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. In evaluating the motion to suppress, the trial court acts as the finder of fact and, therefore, is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8. Therefore, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id. See also State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 6 ("We apply a de novo standard in determining whether the trial court properly denied appellant's motion to suppress.").

{¶ 12} The trial court made the following factual findings, which we must accept as true if they are supported by competent, credible evidence:

---

[1] We note the state contends that it raised arguments relating to the issue of standing in its memorandum contra. Specifically, the state points to its citation of *Rakas v. Illinois*, 439 U.S. 128 (1978), which was followed by a parenthetical stating only "[s]tanding." This citation followed the state's assertion that "[a]n evidentiary hearing relative to claims of improper search and/or seizure will establish that the evidence sought to be introduced by the state was obtained by Constitutionally [sic] valid means and that no applicable Exclusionary Rule bars its admission into evidence." Here, an evidentiary hearing was held and the state failed to advance any argument related to standing. Additionally, we find no merit to the state's argument that defendant's assertion of "his" constitutional rights in general was sufficient absent more to preserve the issue of standing. We further note that the trial court in its entry conducted no analysis regarding the issue of standing and made no findings regarding the same. (Decision and Entry at 1.)

Officer Wise's testimony revealed that on the evening of March 8, 2014, Officer Wise was dispatched to 625 S. Burgess Ave. to investigate a report of an open window and possible burglary. As Officer Wise was standing in the backyard of 625 S. Burgess Ave., he heard and saw two men walking in the alley. The men stopped behind a house across the alley from where Officer Wise was standing. He saw one of the men, later identified as Defendant Wintermeyer, leave the alley, walk up to and enter a house. After several minutes, Defendant Wintermeyer exited the house and returned to his companion in the alley. Officer Wise testified that neither of the men had done anything suspicious up to this point.

As Defendant Wintermeyer was returning to his companion, Officer Wise noticed that Wintermeyer was holding a small object in his hand, which he appeared to hand to his companion. Officer Wise decided to investigate. He turned on his flashlight, identified himself as a police officer and approached the men. Neither of the men attempted to flee. As Officer Wise approached, he observed that the object Defendant Wintermeyer had handed to his companion appeared to be a small plastic bag. Officer Wise then reached out and took the bag from the companion's hand. After taking the plastic bag, Officer Wise was able to see that the bag contained a brown substance, which Officer Wise immediately suspected was heroin. Officer Wise arrested Defendant Wintermeyer, placed him in the back of the cruiser, and had the contents of the plastic bag field-tested by another officer. The result was positive for heroin.

(Decision and Entry at 1-2.)

## B. Applicable Law

1. Constitutional Protections

{¶ 13} The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or other things to be seized." Article I, Section 14 of the Ohio Constitution contains a nearly identical provision:

The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and

> seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized.

*See also* R.C. 2933.22(A) and Crim.R. 41(C).

{¶ 14} Historically, the protections afforded by Article I, Section 14 of the Ohio Constitution have been construed as coextensive with the protections of the Fourth Amendment of the United States Constitution. *State v. Geraldo*, 68 Ohio St.2d 120, 125-26 (1981) ("We are disinclined to impose greater restrictions in the absence of explicit state constitutional guarantees protecting against invasions of privacy that clearly transcend the Fourth Amendment. * * * It is our opinion that the reach of Section 14, Article I, of the Ohio Constitution * * * is coextensive with that of the Fourth Amendment."); *State v. Robinette*, 80 Ohio St.3d 234, 239 (1997) (stating that courts "should harmonize * * * interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, unless there are persuasive reasons to find otherwise"); *State v. Jones*, 88 Ohio St.3d 430, 434 (2000), *modified in State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, syllabus. However, it is well-recognized that states may "rely on their own constitutions to provide broader protection for individual rights, independent of protections afforded by the United States Constitution." *Robinette* at 238. *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 38 (1993), paragraph one of the syllabus ("In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall."). Thus, in certain circumstances, the Supreme Court of Ohio has construed Article I, Section 14 of the Ohio Constitution as providing greater protection than the Fourth Amendment to the United States Constitution. *Brown* at ¶ 22; *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23 ("Article I, Section 14 of the Ohio Constitution affords greater protection than the Fourth Amendment against searches and seizures conducted by members of law enforcement who lack authority to make an arrest."). *See Robinette* at 238 (noting that a "state may impose greater restrictions on police activity pursuant to its own state constitution than is required by federal constitutional standards").

{¶ 15} "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), citing *Katz v. United States*, 389 U.S. 347, 360 (1967).

"The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Id.* In keeping with this principle, both the Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article I, Section 14 of the Ohio Constitution prohibit the government from conducting warrantless searches and seizures, subject to certain exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009), quoting *Katz* at 357 (" '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' "); *State v. Limoli*, 10th Dist. No. 11AP-924, 2012-Ohio-4502, ¶ 20, citing *State v. Fowler*, 10th Dist. No. 10AP-658, 2011-Ohio-3156, ¶ 11-12. Common exceptions to the warrant requirement include a consensual encounter with a police officer and an investigative detention, commonly referred to as a *Terry* stop.[2]

2. <u>Consensual Encounter</u>

{¶ 16} An encounter between a police officer and a member of the public is consensual if a reasonable person would feel free to disregard the officer's questions or terminate the encounter and go about his or her business. *Florida v. Bostick*, 501 U.S. 429, 434 (1991), citing *California v. Hodari D.*, 499 U.S. 621, 628 (1991). Because a consensual encounter does not involve a restraint on a person's liberty or privacy, such encounter does not constitute a seizure for purposes of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 (1968), fn. 16 ("[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."). Thus, consensual encounters between police officers and members of the public do not implicate Fourth Amendment protections. *Florida v. Royer*, 460 U.S. 491, 498 (1983) (plurality opinion) ("If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed."); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.); *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 20 (10th Dist.); *State v. Moyer*, 10th Dist. No. 09AP-434, 2009-Ohio-6777, ¶ 13.

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

{¶ 17} "A police officer may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion that an individual is currently engaged in criminal activity or is about to engage in such conduct." *State v. Westover*, 10th Dist. No. 13AP-555, 2014-Ohio-1959, ¶ 15, citing *Mendenhall* at 556. "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine identification, and request consent to search luggage, provided they do not convey a message that compliance with their requests is required." (Citations omitted.) *Bostick* at 434-35. "Generally, when a police officer merely approaches and questions persons seated within parked vehicles, a consensual encounter occurs that does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts." *Jones*, 2010-Ohio-2854, ¶ 20, citing *State v. McClendon*, 10th Dist. No. 09AP-554, 2009-Ohio-6421, ¶ 8.

3. Investigative Detention

{¶ 18} An investigative detention, unlike a consensual encounter, constitutes a seizure for purposes of the Fourth Amendment. *Jones*, 2010-Ohio-2854, at ¶ 16. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (finding that a traffic stop entails a seizure "even though the purpose of the stop is limited and the resulting detention quite brief"). Under *Terry*, an investigative detention may be conducted without violating the Fourth Amendment if the investigating officer "reasonably suspects that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). *See Terry* at 21; *State v. Fisher*, 10th Dist. No. 10AP-746, 2011-Ohio-2488, ¶ 18, citing *State v. Williams*, 51 Ohio St.3d 58, 60-61 (1990) ("To justify a brief investigative stop or detention of an individual pursuant to *Terry*, a police officer must be able to cite specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity."). Although the standard for finding reasonable suspicion is less stringent than for a finding of probable cause, it cannot be met by an officer's mere "inchoate and unparticularized suspicion or 'hunch.' " *Terry* at 27. *See State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, citing *Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion can arise from information that is less reliable than that required to show probable cause."); *Illinois v. Wardlow*, 528 U.S.

119, 123 (2000) (finding that although a reasonable suspicion "requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop").

{¶ 19} An appellate court reviews the propriety of an investigative detention in light of the totality of the surrounding circumstances. *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus, approving and following *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer* at 500. "[A]n investigatory stop which is prolonged and extends beyond the scope of the initial detention must be supported by a reasonable suspicion the suspect is engaged in another criminal activity." *State v. Owens*, 10th Dist. No. 03AP-423, 2004-Ohio-5159, ¶ 18, citing *State v. Venham*, 96 Ohio App.3d 649, 656 (4th Dist.1994).

## C. Analysis

### 1. Nature of the Encounter

{¶ 20} We begin by considering whether the encounter between Officer Wise and defendant was in the nature of a consensual encounter or an investigative detention. Here, the state admits that Officer Wise ultimately detained defendant, but contends that "[i]t is not clear exactly when Wise detained [defendant] and Carlson in relation to when he took the baggie of heroin from Carlson." (State's Brief at 13.) The trial court found that "Officer Wise did not have reasonable suspicion of criminal activity until after [defendant] had been detained and Officer Wise had seized the small plastic object he had seen [defendant] carry from the house across the alley from where Officer Wise was standing." (Decision at 3.) Although the court did not determine the exact point of detention, from this statement, it is clear the trial court found that Officer Wise detained defendant prior to seizing the plastic bag.

{¶ 21} The trial court's finding that Officer Wise detained defendant prior to seizing the plastic bag is supported by Officer Wise's testimony at the suppression hearing:

> [Defense counsel]: You immediately detained him, correct?
>
> [Officer Wise]: Yes.
>
> [Defense counsel]: Then you collected the plastic baggie?

[Officer Wise]: Yes.

[Defense counsel]: Then after that you immediately recognized that it was an illegal narcotic, right?

[Officer Wise]: Correct.

[Defense counsel]: You did not upon approach ask them who they were, did you?

[Officer Wise]: I don't remember.

[Defense counsel]: You didn't ask them anything with regard to why they were there or what they were doing?

[Officer Wise]: I don't recall what I said to them specifically.

[Defense counsel]: But you did detain them, right?

[Officer Wise]: Yes.

[Defense counsel]: And at that point in time the detention was based upon the handing over of a small object, correct?

[Officer Wise]: And visibly seeing a small plastic baggie.

(Tr. at 24-25.) On redirect, Officer Wise testified as follows:

[Assistant Prosecutor]: [A]t what point were those individuals no longer allowed to leave that alley?

[Officer Wise]: When I approached them and I could clearly see [Carlson] was holding a plastic bag in his hand that was suspected narcotics.

(Tr. at 27.)

{¶ 22} Here, nothing in the record demonstrates that Officer Wise's interaction with defendant and Carlson was consensual. Officer Wise did not testify that he asked defendant any questions or engaged him in conversation. Indeed, Officer Wise was not able to specifically recall saying anything at all upon approaching defendant.[3] However,

_____

[3] We note that, although the trial court found that Officer Wise "identified himself as a police officer," no support for this finding appears in the record. (Decision at 2.) The state concedes this point. (State's Brief at 12.)

Officer Wise did specifically agree that he "immediately detained [defendant]" and "then * * * collected the plastic bag." (Tr. at 24.)

{¶ 23} An officer's subjective intent is irrelevant in determining whether a seizure has occurred. However, such intent is relevant when conveyed to the defendant. *See Michigan v. Chesternut*, 486 U.S. 567, 575 (1988), fn. 7; *United States v. Fuller*, 120 F.Supp.3d 669, 677-78 (E.D.Mich.2015); *State v. Lunce*, 12th Dist. No. CA2000-10-209 (May 21, 2001). Here, Officer Wise confirmed the statement in his written report that he "detained both subjects and collected the small plastic baggie that Mr. Carlson was now holding." (Tr. at 23.) Regardless of Officer Wise's statement that he detained defendant, at the moment Officer Wise physically seized the item in question from Carlson's hands, a detention certainly occurred. *See West v. Davis*, 767 F.3d 1063, 1070-71 (11th Cir.2014) (finding officer "seized [the person in question] *at the moment* that he physically grabbed her hand") (Emphasis added.); *Slusher v. Carson*, 540 F.3d 449, 454-55 (6th Cir.2008); *United States v. Casado*, 303 F.3d 440, 443 (2d Cir.2002) (finding "[defendant] was seized when [the officer] grabbed his hand"); *United States v. Fonville*, 127 F.Supp.3d 790, 797 (E.D.Mich.2015); *State v. Simmons*, 12th Dist. No. CA2012-11-229, 2013-Ohio-5088, ¶ 16. *See also Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking.").

{¶ 24} Thus, we conclude the trial court did not err in finding that Officer Wise detained defendant prior to taking the plastic bag. *See State v. Lynch*, 196 Ohio App.3d 420, 2011-Ohio-5502, ¶ 28 (8th Dist.) (finding detective's statement that the defendant would have been arrested if he attempted to leave supported conclusion that the encounter was not consensual, but rather an investigative stop).

2. Legality of the Detention

{¶ 25} Having found that defendant was subject to an investigative detention, we next consider whether such detention was supported by reasonable suspicion that defendant was engaged in or was about to be engaged in criminal activity. The state contends that Officer Wise reasonably suspected defendant was engaged in criminal activity because, prior to seizing the plastic bag, Officer Wise made the following

observations: "(1) [defendant] and Carlson approach a house at night through the alley, (2) [defendant] goes inside the house while Carlson waits in the alley, (3) [defendant] emerges from the house one or two minutes later, (4) [defendant] hands Carlson [an] object, (5) Wise sees in plain view Carlson carrying a small object that is wrapped in a plastic, cellophane baggie." (State's Brief at 13-14.)

{¶ 26} Here, the state argues that "the brief time that [defendant] was inside the house suggested that he was a 'short term visitor who may have been consummating a drug transaction.' "  (State's Brief at 14, quoting *Utah v. Strieff*, ___ U.S. ___, 136 S.Ct. 2056, 2063 (2016).)   In *Strieff*, an officer conducted intermittent surveillance of a residence based on a tip of drug-related activity. Following his observation of frequent, short-duration visits to the residence by different individuals, the officer suspected the occupants of the residence were selling drugs. Here, unlike in *Strieff*, Officer Wise was not responding to a report of drug-related activity or conducting surveillance on the residence that defendant entered. Furthermore, Officer Wise's testimony does not reflect his knowledge of whether defendant lived at the residence in question or was merely a visitor. Thus, we do not construe *Strieff* so broadly as to find that a brief visit to a residence without more is indicative of the consummation of a drug transaction.

{¶ 27} The state also points to Officer Wise's observation of defendant handing Carlson a small object wrapped in plastic. Although Officer Wise observed defendant hand Carlson an object, he testified he was not able to observe whether the object defendant handed to Carlson contained illegal drugs. Specifically, on cross-examination, Officer Wise testified regarding his written report of his observations:

> [Defense counsel]: You report: Several minutes later [defendant] exited the residence and met up with [Carlson]. Officer Wise observed [defendant] was holding a small object in his hand, correct?
>
> [Officer Wise]: Yes, correct.
>
> [Defense counsel]: At no point in time do you identify at that time that the substance you believed was visibly heroin or any illegal drugs, correct?
>
> [Officer Wise]: Correct.

[Defense counsel]: Continue: And was handing over the object to [Carlson], correct?

[Officer Wise]: Yes.

[Defense counsel]: And at no point in time did you identify that you believed that that substance would be illegal drugs or heroin, right, in that sentence?

[Officer Wise]: Not in that sentence, no.

[Defense counsel]: Next sentence: At this time Officer Wise approached both subjects and observed the object [defendant] was holding was a small plastic baggie, correct?

[Officer Wise]: Correct.

[Defense counsel]: Alright. Nowhere in that sentence do you identify that you visibly observed that to be heroin, correct?

[Officer Wise]: Correct.

[Defense counsel]: Next sentence: Officer Wise detained both subjects and collected the small plastic baggie that [Carlson] was now holding, correct?

[Officer Wise]: Correct.

(Tr. at 22-23.) Furthermore, Officer Wise testified that neither defendant nor Carlson attempted to flee or made any furtive movements when he approached them. Additionally, Officer Wise did not report that defendant or Carlson appeared to be nervous. *Compare In re Parks*, 10th Dist. No. 04AP-355, 2004-Ohio-6449, ¶ 17 (finding the defendant's nervousness to be a factor in determining reasonable suspicion of criminal activity); *Wardlow* at 124 (recognizing that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion").

{¶ 28} The state also points to two cases from the Eighth Appellate District: *State v. Morgan*, 8th Dist. No. 87578, 2007-Ohio-71, and *State v. Barr*, 86 Ohio App.3d 227 (8th Dist.1993). In *Morgan*, a police officer in a "high drug activity area" stopped the defendant's vehicle after observing another person enter, leave, and return to the defendant's vehicle, handing the defendant a bag. *Morgan* at ¶ 6. After pulling over the defendant's vehicle and ordering him out, officers seized a plastic bag they observed

sticking out of the defendant's front pants pocket which they later determined contained illegal drugs. The court found that officers had reasonable suspicion of criminal activity to stop the vehicle and were justified in seizing the bag based on the "plain view" exception to the warrant requirement.

{¶ 29} In *Barr*, detectives were "monitoring a high drug-trafficking area" when they observed a male individual walk up to the defendant and engage her in a brief conversation. *Id.* at 230. The man gave the defendant money, she reached into her shirt pocket, pulled out a plastic bag, and gave the man something out of the plastic bag. Detectives approached the pair and identified themselves as police officers. The man ran away, and the defendant stuck the plastic bag in her shirt pocket. Initially, the defendant walked away from the detectives and did not comply with their request to stop. Upon approaching the defendant, the detectives observed a plastic bag protruding from the defendant's pocket. Detectives asked the defendant for identification and inquired what was in her pocket. After the defendant stated that she did not have identification and denied that anything was in her pocket, the detectives removed the bag that was protruding from the pocket. The court found that the officers possessed probable cause to associate the visible plastic bag with criminal activity, thereby justifying its seizure under the plain view exception to the warrant requirement.

{¶ 30} Unlike both *Morgan* and *Barr*, there was no testimony that Officer Wise was surveilling an area known for a high rate of illegal drug transactions. As the state admits, even if the record did reflect this encounter occurred in a high-crime area, such evidence alone would not be sufficient to create a reasonable suspicion. *See Wardlow* at 124 (finding that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," although such fact is "among the relevant contextual considerations in a *Terry* analysis"); *State v. Bradford*, 10th Dist. No. 14AP-322, 2014-Ohio-5527, ¶ 29. Furthermore, although Officer Wise characterized defendant's handing of the plastic bag to Carlson as a "hand-to-hand exchange," Officer Wise did not observe defendant and Carlson exchange money, unlike in *Barr.* (Tr. at 12.)

{¶ 31} In the trial court, the state did not argue that the plain view exception applied; therefore, such argument is waived and cannot be raised for the first time on

appeal. *Thomas* at ¶ 37, citing *Bing* at 449; *ProgressOhio.org, Inc.* at ¶ 16; *Neal* at ¶ 29. Nonetheless, even if we were to consider such argument for the first time on appeal, we cannot agree that the plain view exception applies under the facts of this case.

{¶ 32} Neither the evidence in the record nor the trial court's findings support the conclusion that Officer Wise was able to observe anything prior to seizing the plastic bag that would give him probable cause to believe that the item was associated with criminal activity sufficient to satisfy the "immediately apparent" requirement to the plain view exception. *Minnesota v. Dickerson*, 508 U.S. 366, 376 (1993) ("[T]he Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures."); *State v. Groves*, 156 Ohio App.3d 205, 2004-Ohio-662, ¶ 42 (2d Dist.); *State v. Johnson*, 10th Dist. No. 08AP-990, 2009-Ohio-3436, ¶ 33 (Bryant, J., concurring). The trial court found that only "[a]fter taking the plastic bag" was Officer Wise "able to see that the bag contained a brown substance, which Officer Wise immediately suspected was heroin." (Decision at 2.) The trial court's finding is supported by competent, credible evidence in the form of Officer Wise's own testimony under cross-examination. *See supra* at ¶ 27. We must, therefore, accept such finding. *Burnside* at ¶ 8.

{¶ 33} Therefore, having reviewed the totality of the circumstances, we conclude Officer Wise did not possess a reasonable suspicion that defendant was engaged in or was about to be engaged in criminal activity. Accordingly, we conclude the detention violated defendant's Fourth Amendment rights.

3.  Application of the Exclusionary Rule

{¶ 34} Next, we address the state's argument that even if defendant's Fourth Amendment rights were violated, "the exclusionary rule does not apply." (State's Brief at 22.)

{¶ 35} The exclusionary rule operates to bar the state's use of evidence obtained in violation of a person's Fourth Amendment rights. *Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court"). The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect,

rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348 (1974). The United States Supreme Court has held that the exclusionary rule applies to both "primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' " *Segura v. United States*, 468 U.S. 796, 804 (1984), quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939). *See also Wong Sun v. United States*, 371 U.S. 471 (1963).

{¶ 36} Much like the exceptions to the general prohibition on warrantless searches and seizures, courts have recognized exceptions to application of the exclusionary rule. *Strieff* at 2061 (listing some of the exceptions). Two exceptions relevant to the instant case are the attenuation doctrine and the good-faith exception.

{¶ 37} The good-faith exception to the exclusionary rule, recognized by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), and adopted by the Supreme Court of Ohio in *State v. Wilmoth*, 22 Ohio St.3d 251 (1986), provides that "the exclusionary rule should not be applied to bar use of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *State v. Hoffman*, 141 Ohio St. 3d 428, 2014-Ohio-4795, ¶ 29, citing *Leon* at 918-23, 926. The good-faith exception is supported by the rationale that, generally, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope * * * there is no police illegality and thus nothing to deter." *Leon* at 920-21. *See also Davis v. United States*, 564 U.S. 229, 238 (2011), quoting *Herring v. United States*, 555 U.S. 135, 143 (2009) (finding that "the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue"); *Arizona v. Evans*, 514 U.S. 1, 14 (1995); *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984).

{¶ 38} Although there was no search warrant in this case, we note the United States Supreme Court has extended the good-faith exception to circumstances other than an invalid search warrant. *See Illinois v. Krull*, 480 U.S. 340 (1987) (applying good-faith exception to searches conducted in reasonable reliance on subsequently invalidated statute); *Evans* (applying good-faith exception where officers reasonably relied on mistaken information regarding an arrest warrant in a computer database maintained by

judicial employees); *Herring* (extending good-faith exception where officer reasonably relied on erroneous information regarding a warrant in a database maintained by police employees); *Davis*, 564 U.S. at 241 (applying good-faith exception where officers acted in objectively reasonable reliance on binding judicial precedent). Similarly, the Supreme Court of Ohio has expanded the application of the good-faith exception. *See State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021 (applying good-faith exception where officer acted in objectively reasonable reliance on United States Supreme Court precedent that was overturned after the officer completed the search); *State v. Brown*, 142 Ohio St.3d 92, 2015-Ohio-486 (applying good-faith exception where a probate judge issued a warrant without authority). Thus, underlying *Leon* and its progeny is the general principle that the exclusionary rule's purpose, i.e. deterrence of police conduct in violation of the Fourth Amendment, is not achieved by punishing an officer for acting in objectively reasonable reliance on information or authority that, unbeknownst to the officer, was erroneous.

{¶ 39} Here, however, Officer Wise was not acting in objectively reasonable reliance on information that later was revealed to be erroneous. Instead, he acted on the basis of his own inchoate suspicion of criminal activity when he detained defendant in violation of his Fourth Amendment rights. *See Thomas* at ¶ 48, quoting *State v. Simon*, 119 Ohio App.3d 484, 488 (9th Dist.1997) (finding that " '[i]t is significant that the mistake * * * was not made by a third person, but by the officers themselves' "). Such conduct is precisely what the exclusionary rule is meant to deter. *Herring* at 144 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."); *Krull* at 348-49, quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975) ("[B]ecause the purpose of the exclusionary rule is to deter police officers from violating the Fourth Amendment, evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' "). Therefore, because Officer Wise was not acting in objectively reasonable reliance on erroneous information, we conclude that the good-faith exception is inapplicable. *See*

*Thomas* at ¶ 48; *State v. Dickman*, 10th Dist. No. 14AP-597, 2015-Ohio-1915, ¶ 26; *State v. Forrest*, 10th Dist. No. 11AP-291, 2011-Ohio-6234, ¶ 17-18; *Simon* at 488-89.

{¶ 40} We next consider application of the attenuation doctrine to these facts. The attenuation doctrine provides that evidence discovered as a result of unconstitutional police conduct is admissible where the causal connection between the offending conduct and the resultant discovery is remote or has been interrupted by an intervening event such that "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Hudson v. Michigan*, 547 U.S. 586, 593 (2006). *See Nardone* at 341; *Wong Sun*; *Brown v. Illinois*, 422 U.S. 590 (1975); *Columbus v. Shepherd*, 10th Dist. No. 10AP-483, 2011-Ohio-3302, ¶ 42, citing *State v. Carter*, 69 Ohio St.3d 57, 67 (1994). The United States Supreme Court has identified three factors to be considered when applying the attenuation doctrine: (1) the "temporal proximity" between the unconstitutional conduct and the discovery of evidence, (2) the "presence of intervening circumstances," and (3) the "purpose and flagrancy of the official misconduct." *Brown*, 422 U.S. at 603-04.

{¶ 41} Here, in support of its argument that the exclusionary rule does not apply, the state again points to the recent United States Supreme Court decision in *Strieff*. As we have previously discussed, in that case, an officer suspected that illegal drug activity was taking place at a residence following an anonymous tip and his observation of frequent, short-duration visits. During his surveillance of the residence, the officer observed Strieff exit the house and walk to a nearby convenience store. The officer detained Strieff in the store's parking lot, identified himself, and demanded to know what Strieff was doing in the residence. The officer requested Strieff's identification and Strieff complied. The officer used Strieff's identification to check for warrants and discovered that Strieff had an outstanding arrest warrant for a traffic violation. The officer arrested Strieff pursuant to the warrant and performed a search of Strieff incident to the arrest, discovering drugs and drug paraphernalia on Strieff's person.

{¶ 42} In that case, the United States Supreme Court examined the attenuation doctrine in considering "whether the discovery of a valid arrest warrant was a sufficient intervening event to break the causal chain between the unlawful stop and the discovery of drug-related evidence." *Strieff* at 2062. Applying the three factor test, the court found

that although the temporal proximity between the stop and discovery favored suppression, that consideration was outweighed by the "critical intervening circumstance" of the pre-existing arrest warrant that was "wholly independent of the illegal stop" and the absence of "flagrantly unlawful police misconduct." *Id.* Therefore, the court held that "the evidence [the officer] seized as part of his search incident to arrest is admissible because his discovery of the arrest warrant attenuated the connection between the unlawful stop and the evidence seized from Strieff incident to arrest." *Id.* at 2064.

{¶ 43} Applying the three-part test articulated in *Brown*, 422 U.S. 590, to the facts of this case, we first examine the temporal proximity factor. In considering the temporal proximity factor, courts have looked to whether there was a "substantial time" separating the unlawful detention and the discovery of evidence. *Kaupp v. Texas*, 538 U.S. 626, 633 (2003). *See also Brown*, 422 U.S. at 604. Here, the record does not reflect there was any substantial break between the unlawful detention and the discovery of the evidence. Thus, as in *Strieff*, the temporal proximity between the unlawful conduct and the discovery of evidence favors suppression.

{¶ 44} Second, we consider whether there were any intervening circumstances. Following from our analysis of the first factor, there were no intervening circumstances present here. The record is devoid of any events or other circumstances separating the unlawful detention and the discovery of evidence. Significantly, unlike in *Strieff*, the record does not reflect that Officer Wise was acting pursuant to a search or arrest warrant. *See also Segura* at 815. Thus, the second factor favors suppression.

{¶ 45} Finally, we examine the third factor, i.e. the purpose and flagrancy of the officer's actions. Here, unlike in *Strieff*, Officer Wise was not acting on the basis of a tip that drug activity was taking place. Furthermore, as discussed in our analysis of the good-faith exception, Officer Wise did not act on the basis of erroneous information from a third party, but rather based on his own inchoate suspicion. Thus, we find the third factor favors suppression. In light of our analysis of the three-part test in *Brown*, 422 U.S. 590, we find that, on the facts and circumstances of this case, the connection between the unlawful conduct and the resultant discovery of evidence is not "sufficiently attenuated to dissipate the taint." *Segura* at 815.

{¶ 46} In conclusion, we agree with the trial court that the detention was unlawful and we find no exception to the exclusionary rule applies. Therefore, the trial court did not err in granting defendant's motion to suppress. Accordingly, we overrule the state's single assignment of error.

## IV. Conclusion

{¶ 47} Having overruled the state's single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

HORTON, J., concurs.
SADLER, J., dissents.

SADLER, J., dissenting.

{¶ 48} Because I believe the trial court erred in granting defendant's motion to suppress, I would sustain the state's assignment of error and reverse the judgment of the trial court. Because the majority does not, I respectfully dissent.

{¶ 49} In my view, the warrantless seizure of the narcotics in Carlson's possession is justified under the plain view exception to the warrant requirement first expressly recognized by the United States Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). The plain view doctrine allows police officers, under particular circumstances, to seize an "article of incriminating character" without a warrant. *State v. Halczyszak*, 25 Ohio St.3d 301, 303 (1986). "The doctrine 'is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost.' " *Id.*, quoting *Illinois v. Andreas*, 463 U.S. 765, 771 (1983).[4]

---

[4] The majority suggests that the state waived the plain view doctrine for purposes of appeal by failing to raise it at the suppression hearing. Under similar facts, this court, in *State v. Muldrow,* 10th Dist. No. 15AP-1119, 2016-Ohio-4774, rejected defendant's claim that the state waived an argument based on the "collective knowledge doctrine" even though the state did not specifically mention the doctrine in briefing or in its closing argument at the suppression hearing. *Id.* at ¶ 20. In *Muldrow*, we held that the state had not waived the collective knowledge doctrine for purposes of appeal because "the state argued the crux of its collective knowledge theory to the trial court, albeit without extensive briefing or citation to relevant authority." *Id.* We further explained that "[e]ven though the state did not fully develop this argument in the trial court, the state did raise the issue before the trial court, and, thus, we will consider the merits of the state's collective knowledge doctrine argument." *Id.*

{¶ 50} The warrantless seizure by a law enforcement officer of an object in plain view does not violate the Fourth Amendment of the United States Constitution if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object could be plainly viewed, and (2) its incriminating nature was immediately apparent. *State v. Williams*, 55 Ohio St.2d 82 (1978), paragraph one of the syllabus.[5]

{¶ 51} With respect to the first prong of the *Coolidge* test, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio,* 392 U.S. 1, 19 (1968), fn. 16. "The Fourth Amendment is not implicated when a police officer approaches a person in a public place, requests to speak to him, receives permission to do so and then asks questions because the person is free to walk away." *State v. Pierce*, 125 Ohio App.3d 592, 598 (10th Dist.1998), citing *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual * * *; ask to examine the individual's identification * * *; and request consent to search his or her luggage." *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991). The person approached, however, need not answer any question put to him and may continue on his way. *Royer* at 497-98.

{¶ 52} The facts developed at the suppression hearing with regard to Officer Wise's approach to Carlson and defendant establish that Officer Wise simply approached two individuals standing in a dark alley from a distance of ten to fifteen feet away while shining his flashlight at the object in Carlson's hand. There is no evidence that Officer Wise ordered the two suspects to remain where they were or told them they were not free to go, no evidence that he drew a weapon, no evidence that he physically restrained either

---

Here, though the prosecutor did not expressly state that the drugs were in "plain view" when Officer Wise seized the baggie from Carlson's hand, the crux of the state's argument was that Officer Wise lawfully approached Carlson and defendant, that he was able to better observe the baggie from that vantage point, and that, based on his prior observation of a hand-to-hand exchange, he reasonably believed that the small object wrapped in plastic was illegal narcotics. Thus, in my view, the prosecutor argued the plain view theory in the trial court even though he did not use the term "plain view" either in briefing or in closing argument.

[5] "The plain view doctrine previously had a * * * requirement that the officer must discover the incriminating evidence inadvertently, but this requirement was eliminated." *State v. Pitts*, 2d Dist. No. 18964 (Nov. 21, 2001), citing *State v. Waddy*, 63 Ohio St.3d 424, 442 (1992), fn. 5, citing *Horton v. California*, 496 U.S. 128 (1990).

Carlson or defendant, no evidence that he blocked their path, and no evidence of any other demonstration of authority by Officer Wise that would have caused a reasonable person in defendant's position to believe he was not free to go. In my view, these facts establish that Officer Wise was lawfully in a position where he could get a better look at the object in Carlson's hand under illumination. Certainly, the appearance of Officer Wise in a public alley would be less intrusive than an officer who "approaches and questions persons seated within parked vehicles." (Majority at ¶ 17, quoting *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 20 (10th Dist.), citing *State v. McClendon*, 10th Dist. No. 09AP-554, 2009-Ohio-6421, ¶ 8.)

{¶ 53} Neither the record nor case law supports the trial court's conclusion that Officer Wise detained Carlson and defendant at any point in time prior to grabbing the baggie from Carlson's hand. Even if Officer Wise's intent was to conduct an investigation of suspected drug activity, the Fourth Amendment did not require a reasonable suspicion that Carlson and defendant were engaged in criminal activity before Officer Wise could approach them with a flashlight in a public alley way in order to get a better view of the object in Carlson's hand. *See United States v. Dunn*, 480 U.S. 294, 305 (1987) (officer's use of the beam of a flashlight, directed through the essentially open front of the barn, does not transform their observations into an unreasonable search within the meaning of the Fourth Amendment); *United States v. Wright*, 449 F.2d 1355 (D.C.Cir.1971) (officer's conduct in shining a flashlight through a gap between the defendant's closed garage doors was not a search for purposes of the Fourth Amendment); *State v. Pitts*, 2d Dist. No. 18964 (Nov. 21, 2001) (officer leaning into a lawfully stopped vehicle with his flashlight to attempt to view the area between the seat and the console was not a search); *State v. Lungs*, 2d Dist. No. 22704, 2008-Ohio-4928, ¶ 24 ("the fact that [the officer] leaned into the van and utilized a flashlight in observing the evidence [did] not elevate his conduct to a search, and it [did] not negate the fact that the items were otherwise openly visible"). In my view, the first prong of the *Coolidge* test is satisfied because the evidence shows that Officer Wise was lawfully in a position to observe, with the aid of a flashlight, the object in Carlson's hand before reaching out and grabbing it.

{¶ 54} "The 'immediately apparent' requirement of the 'plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity."

*Halczyszak* at paragraph three of the syllabus.[6]  "In ascertaining the required probable cause to satisfy the 'immediately apparent' requirement, police officers may rely on their specialized knowledge, training and experience."  *Id.* at paragraph four of the syllabus.  In the context of the plain view doctrine, "[p]robable cause is a flexible, common-sense standard, merely requiring that the facts available to the officer would warrant a man of reasonable caution to believe that certain items may be contraband."  *Texas v. Brown*, 460 U.S. 730, 731 (1983).  "Probable cause to associate an object with criminal activity does not demand certainty in the minds of police, but instead merely requires that there be 'a fair probability' that the object they see is illegal contraband or evidence of a crime." *State v. Thompson*, 134 Ohio App.3d 1, 4 (2d Dist.1999), quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus.  "[A]n officer may rely on specialized knowledge and training 'to draw inferences and make deductions that might well elude an untrained person.' "  *Halczyszak* at 307, quoting *Brown* at 746.  Accordingly, it is of no consequence that Officer Wise was not absolutely certain that the object contained heroin until he held it in his hand and his partner subsequently field tested the substance. Rather, under *Coolidge* it is sufficient for purposes of the "immediately apparent" prong of the plain view doctrine that Officer Wise had probable cause to associate the object with criminal activity.

{¶ 55} In *State v. Wade*, 12th Dist. No. CA93-12-043 (May 16, 1994), a state trooper stopped the defendant's car for speeding.[7]  When the defendant voluntarily opened the trunk of the car to retrieve his operator's license from a gym bag, the trooper noticed several small plastic bags in the trunk and rolled up baggies in the defendant's gym bag.  Though the trooper could not see what was in the plastic baggies, he reached into the gym bag and removed a baggie.  The trooper recognized the material in the baggie as marijuana and placed the defendant under arrest.  The defendant was subsequently indicted for drug trafficking and possession of drug paraphernalia, but the trial court suppressed the evidence as the fruit of an illegal search.  The Twelfth District held that the

---

[6] Implied in *Coolidge* and the case law applying the plain view doctrine is the recognition that "probable cause" for purposes of the plain view doctrine is distinguishable from probable cause to search or probable cause to arrest.  *Texas v. Brown*, 460 U.S. 730 (1983); *State v. George*, 45 Ohio St.3d 325 (1989); *Halczyszak.*

[7] Motion for delayed appeal denied in *State v. Wade*, 70 Ohio St.3d 1437 (1994).

trial court's decision was contrary to the evidence.  *Id.*  The court of appeals explained its reasoning as follows:

> Trooper Brown immediately recognized that the baggies signaled the presence of illicit drug activity.  The fact that he could not readily see the substance contained in the baggies is of no consequence.  The distinctive character of the baggies and the manner in which they were kept, particularly to the experienced eye of Trooper Brown, made it immediately apparent that they contained contraband. See *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L. Ed. 2d 502.  Based on the foregoing analysis, we find that the [immediately apparent] prong of the *Coolidge* test has been satisfied.  Trooper Brown lawfully viewed the baggies in appellee's trunk and was justified under the plain view doctrine in seizing them.

*Id.*

{¶ 56}  Here, Officer Wise estimated that during his career as a patrol officer for the Columbus Division of Police, he had made "a few dozen" narcotics arrests.  (Tr. at 17.) Officer Wise suspected that defendant "went inside the house and purchased narcotics," based on the relatively short time of one to two minutes defendant had been in the house before returning to the alley to hand off the object to Carlson.  (Tr. at 12.)  Officer Wise acknowledged that when defendant handed the small object to Carlson, he was unable to see it well enough in the darkness to identify it as narcotics, but he suspected at that point in time he had observed a drug transaction.  He testified that "[w]hen I approached them and I could clearly see * * * Carlson was holding a plastic bag in his hand that was suspected narcotics."  (Tr. at 27.)  Officer Wise shone his flashlight on the object in Carlson's hand and he could see "a small object, maybe the size of my pinkie there wrapped up in plastic wrap."  (Tr. at 13.)  Under these circumstances, as in *Wade*, the "immediately apparent" prong of the plain view doctrine has been satisfied.

{¶ 57}  Accordingly, I believe the evidence presented at the suppression hearing establishes that both prongs of *Coolidge* have been met.  Officer Wise saw defendant go into a residence for one to two minutes and return to the alley where he immediately passed a small object to Carlson.  Based on his experience as an officer who had made multiple previous drug arrests, Officer Wise suspected he had witnessed a hand-to-hand drug transaction and decided to further investigate by approaching the two individuals in a public place, lawfully utilizing his flashlight to illuminate the object defendant handed to

Carlson. When Officer Wise saw in plain view a pinkie sized object wrapped in plastic wrap, he suspected it to be heroin. Officer Wise grabbed the baggie from Carlson's hand and observed that the pinkie sized object was brown in color, indicating heroin.[8] On these facts, the record establishes that Officer Wise was lawfully in a position where he could plainly view the object handed off from defendant to Carlson and, after lawfully illuminating the object, Officer Wise was able to observe a substance under circumstances which would warrant a man of reasonable caution to believe that the substance was illegal narcotics.[9]

{¶ 58} "When * * * officers observe[] what could be interpreted as a drug-buy, they [have] a duty to investigate." *State v. Hartman*, 2d Dist. No. 13332 (Oct. 22, 1992). Because I believe that Officer Wise observed what he reasonably believed to be illegal drugs in plain view after approaching Carlson and defendant in a public place, I conclude that no violation of defendant's constitutional rights occurred when the baggie was taken from Carlson and that the trial court erred when it granted defendant's motion to suppress.

{¶ 59} For the foregoing reasons, I would reverse the judgment of the trial court and remand this matter for further proceedings. Because the majority does not, I respectfully dissent.

---

[8] Even if defendant was detained the moment Officer Wise grabbed the baggie from Carlson, because Officer Wise was lawfully in a position where he could see the baggie in Carlson's hand and because the criminality of the contents of the baggie was apparent to him, Carlson had no privacy right to the object and Officer Wise could lawfully seize it under the plain view doctrine.

[9] Though the majority distinguishes the plain view case law cited by the state because there was additional evidence presented in those cases that the arresting officer was surveilling an area known for drug activity, there is no case law holding that such circumstances are required for the application of the plain view doctrine. Nor is there any case law suggesting that the arresting officer must see an exchange of money, as was the case in *State v. Barr*, 86 Ohio App.3d 227 (8th Dist.1993), in order to associate an object with an illegal drug transaction.