[Cite as *State v. Johnson*, 2014-Ohio-671.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-637 |
| v. | : | (C.P.C. No. 12CR-02-906) |
| John D. Johnson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 25, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Stuart A. Benis* and *William Lazarow*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, John D. Johnson ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas imposing a sentence of five years of imprisonment following his plea of no contest to the criminal charges on which he was indicted. Because we conclude that the trial court properly denied appellant's motion to suppress evidence obtained pursuant to a search warrant, we affirm.

{¶ 2} On the evening of July 23, 2011, Detective Jon Dillon of the Franklin County Sheriff's Department received a telephone call from an unknown individual, who indicated that appellant was storing narcotics in Unit B2 of the Car-Go Self Storage facility on Westerville Road. Based on the tip, Detective Dillon requested that Detective Thomas Lung, a canine handler with the Franklin County Sheriff's Department, perform a canine sniff test on the storage facility. On July 25, 2011, Detective Dillon, Detective Lung, and

Franklin County Sheriff's Department Corporal Coleman took the canine to the storage facility. After being admitted to the storage facility by the managers and obtaining permission to perform the canine sniff test, Detective Lung ran the canine around building B of the storage facility.  The canine signaled that it detected the odor of narcotics outside Unit B2. Detective Dillon then left to prepare a request for a warrant to search Unit B2, while Detective Lung and Corporal Coleman remained at the storage facility. After Detective Dillon left, appellant arrived at the storage facility. In response to questioning from Detective Lung, appellant admitted that he had cocaine inside Unit B2.

{¶ 3}  Detective Dillon prepared an affidavit in support of a search warrant attesting that a "reliable source" provided information about possible narcotics being stored by appellant at Unit B2 of the Car-Go Self Storage facility. The affidavit further attested that Detective Dillon, Detective Lung, and Corporal Coleman were admitted to the storage facility by its managers and obtained permission for the canine sniff test. The affidavit attested that the canine indicated the odor of narcotics at the bottom seam of the door for Unit B2. The affidavit attested that appellant arrived at the storage facility after the canine sniff test and admitted to Detective Lung that he had cocaine stored in Unit B2. Finally, the affidavit attested that appellant had several prior arrests, convictions and/or incarcerations for possession of drugs. Detective Dillon presented the affidavit and search warrant request to a Franklin County municipal judge, who granted the search warrant. Upon executing the warrant, deputies located cocaine inside a dresser drawer inside Unit B2.

{¶ 4}  Appellant was indicted on one count of possession of crack cocaine with a firearm specification and one count of possession of cocaine with a firearm specification. Appellant moved to suppress the evidence obtained pursuant to the search warrant. Following a hearing, the trial court denied the motion to suppress. Appellant subsequently entered a no-contest plea on all charges, and the trial court sentenced him to a total of five years of imprisonment.

{¶ 5}  Appellant appeals from the trial court's judgment, assigning a single error for this court's review:

> THE TRIAL COURT ERRED IN FAILING TO SUPPRESS
> EVIDENCE OBTAINED BY THE STATE DURING ITS

IMPROPER SEARCH AND SEIZURE OF ITEMS FROM DEFENDANT'S STORAGE LOCKER, IN VIOLATION OF DEFENDANT'S RIGHTS UNDER THE FOURTH AMEND-MENT TO THE U.S. CONSTITUTION, AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 6} The Supreme Court of Ohio articulated the standard of review for a motion to suppress in *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *Id.* at ¶ 8. In this case, the trial court did not make any findings of fact. We apply a de novo standard in determining whether the trial court properly denied appellant's motion to suppress. *Id. See also State v. McDowell*, 10th Dist. No. 13AP-229, 2013-Ohio-5300, ¶ 14.

{¶ 7} The Fourth Amendment to the U.S. Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or other things to be seized." The Ohio Constitution contains a nearly identical provision. Ohio Constitution, Article I, Section 14. *See also* R.C. 2933.22(A); Crim.R. 41(C).

{¶ 8} When determining whether an affidavit in support of a search warrant demonstrates probable cause, a magistrate must " 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of

the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). In reviewing the sufficiency of probable cause in an affidavit, an appellate court must not substitute its judgment for that of the magistrate but, rather, ensure that the magistrate "had a substantial basis for concluding that probable cause existed." *George* at paragraph two of the syllabus. Such analysis is undertaken with great deference to the magistrate's determination of probable cause, and marginal cases should be resolved in favor of upholding the warrant. *Id.*

{¶ 9} Appellant argues that the affidavit upon which the search warrant was based failed to support a finding of probable cause because the affidavit indicated that the tip came from a "reliable source," despite the fact that, at the time he received the tip, Detective Dillon did not know who the informant was and did not have any other evidence that the informant was reliable. Courts have identified three broad classes of informants: (1) the anonymous informant, (2) the known informant from the criminal world who has previously provided reliable tips, and (3) the identified citizen informant. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300 (1999). The anonymous or unknown informant is generally seen as the least reliable of these sources, and information from an unknown informant usually requires independent police corroboration. *Id.*, citing *Alabama v. White*, 496 U.S. 325, 329 (1990). Appellant argues that Detective Dillon's characterization of the informant as a "reliable source" was inaccurate because he had no prior contact with the informant, nor any evidence that the informant was truthful or reliable. At the suppression hearing, Detective Dillon testified that he did not know the person who gave the tip and that he had no way of knowing, at the time he took the call, whether the person was a reliable informant. The state argues that, because the informant provided specific information that included the name of the storage facility, the unit number, and appellant's name, and because Detective Dillon was able to confirm this information through subsequent investigation, the information could properly be characterized in the affidavit as reliable.

{¶ 10} "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.' " *State v. Waddy*, 63 Ohio St.3d 424, 441 (1992), quoting *Franks v. Delaware*, 438 U.S. 154, 155-56

(1978), superseded by constitutional amendment on other grounds, as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, fn.4 (1997). "Reckless disregard" occurs when an affiant has serious doubts about the truth of an assertion. *Id.* However, "[e]ven if the affidavit contains false statements made intentionally or recklessly, a warrant based on the affidavit is still valid unless, 'with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.' " *Waddy* at 441, quoting *Franks* at 156.

{¶ 11} This court has previously concluded that an affidavit may demonstrate probable cause even where it contains misinformation or misstatements. *State v. Allen*, 10th Dist. No. 08AP-264, 2008-Ohio-6916; *State v. DeBlanco*, 10th Dist. No. 89AP-1493 (July 30, 1991). In *Allen*, the police obtained a search warrant based on information provided by a confidential informant and a controlled drug purchase involving the informant, a middleman, and the defendant. *Allen* at ¶ 2-4. The trial court granted the defendant's motion to suppress, concluding, in part, that the affidavit did not vouch for the middleman's reliability and that the informant did not accompany the middleman into the apartment where the controlled buy allegedly occurred. *Id.* at ¶ 10. On appeal, this court reversed the trial court's judgment. The court conceded that the affidavit contained misinformation regarding whether the informant actually saw the defendant sell drugs to the middleman. *Id.* at ¶ 29. However, the court concluded that the affidavit contained sufficient information to establish probable cause that criminal activity was occurring at the location of the controlled buy, even without the assertion that the defendant sold drugs to the middleman. *Id.* at ¶ 30. The affidavit also included a misstatement about when the informant told the police that the middleman had seen drug activity at the location. *Id.* at ¶ 31. Once again, the court found that, even without the misstatement, the affidavit was sufficient to demonstrate probable cause that illegal drug activity was occurring at the location. *Id.* Based on these conclusions, the court held that the affidavit established probable cause and reversed the trial court's judgment suppressing the evidence obtained pursuant to the search warrant. *Id.* at ¶ 41.

{¶ 12} Similarly, in *DeBlanco*, an informant alerted a state agency that the defendant was fraudulently billing the state for allergy services to Medicaid patients. A state investigator prepared an affidavit in support of a search warrant asserting that the

defendant improperly performed allergy "tests." The defendant moved to suppress the evidence obtained pursuant to the warrant, arguing that the proper procedural terminology code referred to allergy "injections" rather than allergy "tests." This court affirmed the trial court's denial of the motion to suppress, concluding that, even if the word "test" was removed from the affidavit, the remaining content demonstrated sufficient probable cause to justify issuance of the warrant. *See also State v. Norman*, 5th Dist. No. 2010-CA-21, 2011-Ohio-568, ¶ 42 (holding that, even without characterization of defendant as having "a lengthy history of illegal drug activity," the remaining content of the affidavits was sufficient to establish probable cause that drug activity would be found at the defendant's residence); *State v. Harrington*, 1st Dist. No. C-0800547, 2009-Ohio-5576, ¶ 9-10 (holding that, even without false statements related to the defendant's criminal history, the other facts in the affidavit supported a finding of probable cause).

{¶ 13} In this case, we need not reach the question of whether Detective Dillon's characterization of the unknown informant as a "reliable source" constituted a false statement because we conclude that, even without that characterization, the affidavit's remaining content was sufficient to establish probable cause. The affidavit attested that the drug-sniffing canine indicated that it detected the odor of narcotics at the bottom seam of the door for storage Unit B2. This was the same unit where the informant indicated the narcotics were being stored. Moreover, the affidavit indicated that, while Detective Lung remained on the premises, appellant arrived at the storage unit and, in response to questions, admitted that he had cocaine stored in storage Unit B2. Finally, the affidavit indicated that appellant's criminal history included several prior arrests and convictions for possession of drugs. Under these circumstances, we conclude that, even without the characterization of the informant as a "reliable source," the remaining content of the affidavit was sufficient to establish probable cause.

{¶ 14} Appellant also argues that Detective Dillon failed to disclose in his affidavit "the fallibilities of canine sniff testing." (Appellant's Brief, 10.) We acknowledge that some courts have held that an omission may be considered a false statement in an affidavit in support of a search warrant. *See, e.g., State v. Berry*, 8th Dist. No. 87493, 2007-Ohio-278, ¶ 37 (holding that omissions count as false statements if designed to mislead or made in reckless disregard of whether they would mislead the magistrate). There was testimony

at the suppression hearing regarding the success rate of the drug-sniffing canine that performed the sniff test. However, appellant did not assert in his written motion to suppress or at the suppression hearing that failure to disclose such information constituted a false statement that would preclude the existence of probable cause. "It is well-settled law that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived." *State v. Barrett*, 10th Dist. No. 11AP-375, 2011-Ohio-4986, ¶ 13. Therefore, by failing to assert it below, appellant has waived the argument that Detective Dillon's affidavit did not support a finding of probable cause because it failed to disclose the failure rate of the canine that performed the sniff test.

{¶ 15} Finally, appellant argues that the state violated his right to privacy by performing the drug canine sniff test in the area outside his storage locker. In effect, appellant appears to argue that the state was required to obtain a search warrant before having the drug-sniffing canine sniff the area outside the storage locker. Appellant cites *Florida v. Jardines*, __ U.S. __, 133 S.Ct. 1409 (2013), recently decided by the United States Supreme Court. In *Jardines*, the Supreme Court held that the use of trained police dogs to investigate the home and its immediate surroundings constituted a search within the meaning of the Fourth Amendment. *Id.* at 1417-18. Acting on an unverified tip that Jardines was growing marijuana in his home, the police took a drug-sniffing canine onto his front porch. The dog ultimately signaled that it identified the odor of drugs along the base of Jardines' front door. The police then obtained a search warrant and, after executing the warrant, located marijuana plants in the home. *Id.* at 1413. The court's opinion held that taking the drug-sniffing canine onto the porch constituted a search because "the officers learned what they learned only by physically intruding on Jardines' property to gather evidence." *Id.* at 1417. Thus, the decision in *Jardines* was based on the fact that the police entered onto a constitutionally protected area, i.e., the curtilage of Jardines' home, without license to do so, in an attempt to discover incriminating evidence. *Id.* at 1416-17.

{¶ 16} Appellant admits that the reasoning in *Jardines* was based on property rights but urges this court to apply the concurring opinion of Justice Kagan, who asserted that the activity constituted a search because, in addition to invading Jardines' property, the police also violated Jardines' reasonable expectation of privacy in the area around his

home.  *Id.* at 1418-19 (Kagan, J., concurring).  However, only two other justices joined in that concurring opinion, and we decline to apply its reasoning to the present appeal. Moreover, appellant has failed to establish that he had a reasonable expectation of privacy in the area *outside* the storage locker, as opposed to the storage locker itself. Detective Dillon testified at the suppression hearing that there was a fence around the entire storage complex with an electronic gate.  Presumably, any individual who rented a storage locker in the facility would have had the code for the electronic gate and would have been able to access the area in front of appellant's storage locker. Detective Dillon also testified that he and Detective Lung were admitted to the storage complex by the facility managers. Under these circumstances, appellant has failed to demonstrate that he had a reasonable expectation of privacy in the area outside the storage unit. *See State v. Harris*, 12th Dist. No. CA2007-04-089, 2008-Ohio-3380, ¶ 19 ("The area in front of the storage unit was open to anyone who had access to the facility via their pass code, which included Officers Lovejoy and Ki. * * * Because Harris had no reasonable expectation of privacy in the possession of his cocaine and other contraband, and because a sniff and alert indicating the location of contraband by a dog legally on the premises is not a search within the meaning of the Fourth Amendment, Ki's sniff and alert on unit 819 without a search warrant did not violate Harris' rights.").

{¶ 17} For the foregoing reasons, we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and O'GRADY, JJ., concur.

_____