[Cite as *State v. Harrison*, 2020-Ohio-3920.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT,                    CASE NO. 8-19-48

    v.

KANDALE L. HARRISON,                      O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 18 03 0091

**Judgment Reversed and Cause Remanded**

Date of Decision: August 3, 2020

APPEARANCES:

    *Eric C. Stewart* **for Appellant**

    *Tina M. McFall* **for Appellee**

**SHAW, P.J.**

**{¶1}** Plaintiff-appellant, the State of Ohio (the "State"), appeals the October 16, 2019 judgment of the Logan County Court of Common Pleas granting the motion to dismiss filed by defendant-appellee, Kandale Harrison ("Harrison"). On appeal, the State argues that the trial court erred in finding the warrant for Harrison's arrest was defective and suppressing the evidence seized as a result of the arrest. Alternatively, the State argues that the trial court erred when it found the good faith exception to the exclusionary rule did not apply.

*Procedural History*

**{¶2}** On February 2, 2018, the Logan County Drug Task Force conducted a controlled drug buy with a confidential informant who had arranged to purchase illegal drugs from Harrison in Bellefontaine, Ohio. The confidential informant met Harrison in a parking area, entered Harrison's vehicle, and purchased illegal drugs from Harrison with $120 in prerecorded money. The confidential informant was fitted with a recording device that captured the transaction. The substance purchased by the confidential informant tested positive for 3.72 grams of cocaine.

**{¶3}** On February 13, 2018, law enforcement obtained a warrant to place a GPS tracker on Harrison's vehicle.

{¶4} On February 27, 2018, law enforcement obtained an arrest warrant for Harrison based upon the February 2, 2018 controlled buy with the confidential informant.

{¶5} On March 5, 2018, law enforcement stopped Harrison's vehicle and executed the arrest warrant in Logan County. While conducting a search incident to arrest, law enforcement found cocaine and a large amount of cash on Harrison's person. Harrison's vehicle was also searched. Inside the vehicle, law enforcement found a loaded 9mm pistol and more cash in the glove box. In the center console, law enforcement found another bag of cocaine, scales, and a small bag of marijuana. The total amount of cash found during the search was $6,225. The drugs found in the vehicle tested positive for 7.39 grams of cocaine. The firearm found in the vehicle was later discovered to be stolen.

{¶6} On April 18, 2018, the Logan County Grand Jury returned a nine-count indictment against Harrison alleging that he committed the offenses of fifth-degree felony trafficking in cocaine; third-degree felony having weapons under disability, with a forfeiture specification; fourth-degree felony improper handling of a firearm in a motor vehicle, with a firearm and forfeiture specifications; fourth-degree felony carrying concealed weapon, with a firearm and forfeiture specifications; third-degree felony having weapons under disability, with a firearm and forfeiture specifications; two fourth-degree felonies for possession of cocaine, with a firearm

and forfeiture specifications; fourth-degree felony trafficking in cocaine, with a firearm and forfeiture specifications; fourth-degree felony receiving stolen property, with a firearm specification; and first-degree felony engaging in a pattern of corrupt activity, with forfeiture specifications. Harrison entered a plea of not guilty to the charges.

{¶7} On April 4, 2019, Harrison filed a motion to suppress the evidence obtained from the stop of his vehicle, subsequent arrest, and search of his person and vehicle pursuant to the execution of the arrest warrant on March 5, 2018. Harrison argued that, at the time of his arrest, the arrest warrant which formed the basis for the stop was not valid because it did not bear the signature of the person who issued the warrant. Therefore, Harrison maintained that the warrant was defective at the time of execution because it did not comport with the requirements of Crim. R. 4(A).

{¶8} On April 17 and September 10, 2019, the trial court conducted hearings on Harrison's suppression motion.[1] The trial court heard testimony from the Municipal Court Clerk and law enforcement officers who requested and executed the arrest warrant. Evidence at the hearing revealed that the Municipal Court Judge initialed the complaint finding probable cause to issue the arrest warrant on February 27, 2018. However, the warrant, which was on a separate page, was not

---

[1] The record reflects a change in trial judge during this timeframe, with the former judge stepping down from office and the subsequent judge being appointed to sit by assignment.

signed by the clerk until it was returned on March 6, 2018, after execution of the warrant and Harrison's arrest on March 5, 2018. In other words, the warrant itself did not bear a signature of the person authorized to issue it at the time of execution. The testimony at the hearing indicated that this was done pursuant to a policy in place at the Bellefontaine Municipal Court to prevent arrest warrants from being entered into the online docket system prior to execution. The testimony indicated that the rationale supporting this policy was intended to prevent apprisal of the arrest warrant to defendants.

{¶9} On October 3, 2019, the trial court issued an "Opinion and Findings," setting forth its determination that the arrest warrant was defective because it was not signed by any person authorized to issue the warrant under Crim.R. 4(A) at the time of execution. The trial court further found that the defect was so apparent that it was not objectively reasonable for a law enforcement officer to rely on the legitimacy of the warrant and, therefore, the good faith exception to the exclusionary rule did not apply.

{¶10} On October 16, 2019, the trial court issued a judgment entry granting Harrison's motion to suppress and concluding that all the evidence obtained by law enforcement from the March 5, 2018 search of Harrison's person and vehicle must be suppressed.

{¶11} The State filed an appeal from this judgment, asserting the following assignment of error.

> **PURSUANT TO *STATE v. HOFFMAN*, 141 OHIO St.3d 428. 2014-OHIO-4795, 25 N.E.3d 993, THE TRIAL COURT ERRED IN SUPPRESSING THE STATE'S EVIDENCE.**

{¶12} In its sole assignment of error, the State argues that the trial court erred when it granted Harrison's motion to suppress. Specifically, the State argues that the unsigned arrest warrant was not defective at the time of execution because it was accompanied by a complaint which bore the signature of the municipal judge indicating that she had found probable cause to issue the warrant, thereby complying with Crim.R. 4(A). The State further argues that even if the warrant is defective, the good faith exception to the exclusionary rule applies and the State's evidence should not be suppressed.

*Standard of Review*

{¶13} Review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court acts as the finder of fact in evaluating a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these

facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id. See also State v. Johnson*, 10th Dist. Franklin No. 13AP-637, 2014-Ohio-671, ¶ 6 ("We apply a de novo standard in determining whether the trial court properly denied appellant's motion to suppress.").

*Evidence Adduced at the Suppression Hearing*

{¶14} In opposition to Harrison's motion to suppress, the State presented the testimony of Detective Brent Joseph of the Logan County Joint Drug Task Force. Det. Joseph stated that he had been with the task force for seven years. Det. Joseph recalled participating in the controlled buy operation between a confidential informant and Harrison on February 2, 2018. He explained that this transaction formed the basis for seeking the arrest warrant for Harrison.

{¶15} On February 27, 2018, Det. Joseph presented the municipal court clerk with a complaint, a blank warrant, and his affidavit setting forth the facts of the February 2, 2018 controlled buy for the municipal court judge to review and make a probable cause determination. He explained that prior to this instance he has submitted numerous complaints in this manner to the municipal court judge requesting the issuance of arrest warrants. Det. Joseph recalled signing the complaint accompanying the arrest warrant in front of the clerk. Det. Joseph did not speak to the judge. Rather, he dropped off the paperwork with the clerk and was

later notified when the warrant was ready to be picked up. He explained that he usually speaks with the judge if she is available when he submits his requests for arrest warrants. However, when the judge is in a hearing or otherwise indisposed, he leaves the paperwork with the clerk.

{¶16} Det. Joseph recalled picking up the arrest warrant at issue from the municipal court clerk's office later that day. He explained that generally when he receives the paperwork from the clerk's office, he looks for the municipal court judge's signature indicating that probable cause has been found. Det. Joseph testified that the judge's signature signifies to him that he has an valid arrest warrant in his hand.

{¶17} In this case, Det. Joseph reviewed the paperwork he received from the municipal court clerk's office and found that the judge had initialed and stamped the complaint indicating that she found probable cause to issue the arrest warrant for Harrison. He explained that at that point he believed he had a valid warrant for Harrison's arrest.

{¶18} Det. Joseph recalled executing the arrest warrant for Harrison on March 5, 2018. He explained that the GPS tracker on Harrison's vehicle indicated that Harrison had been traveling from Columbus, Springfield, and Urbana, making several stops along the way, and was headed back into Logan County. He testified that Harrison's travel pattern was consistent with drug trafficking activity. Upon

Harrison entering Logan County, Det. Joseph, with assistance from Deputy Joe Layman, initiated a traffic stop and served the arrest warrant on Harrison. Det. Joseph admitted that there was no probable cause to stop or to search Harrison or his vehicle other than serving the arrest warrant.[2]

{¶19} Det. Joseph acknowledged at the suppression hearing that the arrest warrant in this case, which was a separate sheet of paper from the complaint, did not bear a signature at the time of execution, and was not filed stamped and signed by the clerk until March 6, 2018, the day after Harrison's arrest. However, Det. Joseph reiterated that he relied on the municipal court judge's initials and stamp on the complaint and testified to his belief that the judge's initials and stamp on the complaint indicated to him that he had a valid arrest warrant.

{¶20} Det. Joseph discussed the municipal court clerk's practice of not signing an arrest warrant until it is returned after execution. He explained that "a few years ago" the clerk began to enter all filings online. (Doc. No. 264 at 13). Soon after, the drug task force discovered that defendants were able to log onto the municipal court's website and see that an arrest warrant had been issued. As a result, the drug task force's operations were hindered. Det. Joseph explained that the task force met with the municipal court judge and clerk and had arranged for the arrest

---

[2] Incidentally, the record reflects that Harrison was stopped by the Ohio State Highway Patrol while traveling between Columbus and Springfield and he was issued a citation for a traffic violation. However, Harrison was not arrested at the time because the Trooper who effectuated the traffic stop was unaware of the outstanding arrest warrant due to the warrant not being entered into the online system at the time.

-9-

warrants not to be entered into the computer system until after they were served and the defendants were arrested.

{¶21} The State also presented the testimony of Karla Stevens, the Clerk of Courts for the Bellefontaine Municipal Court. Ms. Stevens stated that she had been in that position for five years. She acknowledged that it is the practice of the Bellefontaine Municipal Court clerks not to enter arrest warrants sought by the drug task force into the computer system until they are advised that the defendant is incarcerated. She recalled that "several years ago" the drug task force asked the court not to put the warrant information into the computer system to prevent defendants from knowing ahead of time that they had a warrant for their arrest. (Doc. No. 294 at 13). She indicated the reasons given for the practice was not only for the safety of law enforcement, but to also prevent defendants from fleeing. She explained that the municipal court judge had approved this practice.

{¶22} Ms. Stevens remembered Det. Joseph entering the clerk's office on February 27, 2018 and requesting an arrest warrant to be issued for Harrison. She recalled that Det. Joseph presented the complaint to her, which was in affidavit form. At the time, he also swore to and signed the complaint in her presence. Ms. Stevens acknowledged that she notarized Det. Joseph's attestation on the complaint. She explained that the municipal court judge was preoccupied at the time, so she took the complaint, the warrant, and a two-page supporting affidavit for the judge

to review at a later time. Ms. Stevens recalled that the municipal court judge made a probable cause determination by initialing and stamping the complaint on February 27, 2018, but that the arrest warrant was not signed and file stamped by the clerk until it was returned on March 6, 2018 after Harrison was arrested. She explained that this was consistent with the court's practice.

*Discussion*

*Warrant Requirements under Crim.R. 4*

{¶23} Ohio Criminal Rule 4 governs the issuance and contents of arrest warrants and states in pertinent part:

**(A) Issuance.**

> **(1)  Upon Complaint. If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant, or a summons in lieu of a warrant, shall be issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge, to any law enforcement officer authorized by law to execute or serve it.**

**\*\*\***

**(C)  Warrant and Summons: Form.**

> **(2)  Warrant. The warrant shall contain the name of the defendant or, if that is unknown, any name or description by which the defendant can be identified with reasonable certainty, a description of the offense charged in the complaint, whether the warrant is being issued before the defendant has appeared or was scheduled to appear, and the**

**numerical designation of the applicable statute or ordinance.
A copy of the complaint shall be attached to the warrant.**

{¶24} It is interesting to note that Crim.R. 4 refers to *issuance* of the warrant without any reference to a *signature*, particularly by a clerk of courts, where a judge's signature or initials on the attached complaint has already indicated approval of the warrant. Nor is it clear from the Rule that the issuance of the warrant, or the warrant itself, is invalidated simply because the identification of the defendant and the criminal statute is made, as it was in this case, by language on the face of the warrant document referencing those matters as being set forth in the complaint; especially given that the complaint in this case was attached to the warrant as mandated by the Rule.

{¶25} Perhaps as a result of making some of the same observations about the language of Crim.R. 4, the State argues that the "warrant" should be viewed as a "package" containing the complaint, the warrant, and the supporting affidavit. We do not take a position on the State's argument at this time. However, we are also not convinced that the issuance of this warrant with its accompanying complaint and affidavit, was in direct violation of any specific provision of Crim.R. 4. At the same time, it does not seem unreasonable to us, that the term "issued" as used in Crim.R. 4, would most commonly be equated with the execution and signature of the document being issued—i.e., the warrant itself.

{¶26} In addition, we are cognizant of the concern expressed by the State's witnesses with entering the warrant information into the online docket prior to execution. In any event, it would seem to us that the better practice would clearly be to develop a protocol regarding the entry of these matters into the computer that is apart from the formal filing of the documents by the clerk of courts, and which does not result in the service of an unsigned warrant.

*The Good Faith Exception*

{¶27} Notwithstanding the foregoing observations, we need not and do not rule on those issues today because our overall review of this case does not end here. The State argues that the Supreme Court of Ohio's decision in *State v. Hoffman* is dispositive of this case. *Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795. In *Hoffman*, the facts from the suppression hearing revealed that the Toledo Municipal Court pursuant to court policy had been issuing arrest warrants without any probable cause determination, but instead simply relied upon a recitation of the statutory elements of the offense stated in the complaint. The Supreme Court in *Hoffman* determined that a "mere conclusory statement that the person whose arrest is sought has committed a crime is insufficient to justify a finding of probable cause" and found Hoffman's misdemeanor warrants were issued without a probable-cause determination and were therefore invalid. *Id.* at ¶ 14. Notwithstanding the invalid arrest warrant, the Supreme Court also held that suppression of the evidence is not

an automatic remedy and determined that the evidence should not be suppressed because the officers relied on the arrest warrant and acted in good faith. *Id.* at ¶ 24.

**{¶28}** In the case *sub judice*, the trial court concluded that the evidence from the search of Harrison's person and vehicle must be suppressed based on the invalid warrant and the unavailability of any good faith exception in this circumstance.

**{¶29}** The United States Supreme Court has created an "exclusionary rule"—"a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *State v. Dibble*, --Ohio St.3d--, 2020-Ohio-546, ¶ 15, quoting *Davis v. United States*, 564 U.S. 229, 231-232 (2011). Exclusion is not meant to serve as a remedy for the injury caused by an unconstitutional search or seizure but rather as a deterrent against future violations. *Id*. at 236-237. Thus, the question whether the exclusionary sanction should be imposed is " 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' " *Leon*, 468 U.S. at 906, quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983).

**{¶30}** Specifically, "the deterrence benefits of exclusion 'vary with the culpability of the law enforcement conduct' at issue." *Davis* at 239, 131 S.Ct. 2419, quoting *Herring v. United States*, 555 U.S. 135, 143 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the

price paid by the justice system"). But, when police act in an objectively reasonable manner in executing a search believed in good faith to be legal, there is no bad conduct to deter. *States v. Leon*, 468 U.S. 897, 918-920 (1984); *State v. Wilmoth*, 22 Ohio St.3d 251 (1986).

{¶31} The United States Supreme Court has held that the exclusionary rule should not be applied in situations in which an officer has relied in good faith on a warrant issued by a neutral and detached magistrate or judicial officer, notwithstanding the fact that the warrant is later found to be invalid. *Leon* at 913. However, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Id*. at 922. Because the exclusionary rule's purpose is to deter unlawful police conduct, evidence should be suppressed " 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' " *Leon*, 468 U.S. at 919, quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975); *State v. George*, 45 Ohio St.3d 325 (1989).

{¶32} In the instant case, the testimony before the trial court indicates that Det. Joseph believed he had a valid warrant at the time he arrested Harrison. Det. Joseph testified that he relied on the Judge's initials and stamp on the complaint indicating that probable cause to issue the arrest warrant had been found and the

warrant had been approved by the municipal court judge. Unlike the warrant in *Hoffman*—in which the Supreme Court still applied the good faith exception despite finding the warrants were issued without a probable-cause determination—the record in this case establishes that a person authorized under Crim.R. 4(A)(1), and specifically a judge, made a probable cause determination before the warrant for Harrison's arrest was issued.

**{¶33}** Thus, we conclude that Det. Joseph's reliance on the municipal court judge's initials and stamp indicating that probable cause for Harrison's arrest had been found was done in good faith and was objectively reasonable given the testimony regarding the policy put in place by the municipal court judge and clerk regarding the delay in signing and file stamping the warrant itself by the clerk until after execution. Accordingly, we disagree with the trial court's finding on this issue and conclude that the facts of this case present a scenario that falls within the purview of the good faith exception to exclusionary rule and therefore the evidence obtained by the State subsequent to Harrison's arrest should not have been suppressed.

**{¶34}** In sum, even assuming that the arrest warrant issued in this case failed to properly comply with Crim.R. 4(A), we nevertheless find that Det. Joseph was relying in good faith on the warrant issued by the municipal court judge and clerk

Case No. 8-19-48

when he executed the warrant and therefore the exclusionary rule should not have been applied to suppress the evidence obtained by the State in this case.

{¶35} For all these reasons, the assignment of error is sustained, the judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ZIMMERMAN, J.J., concurs.**

**WILLAMOWSKI, J., concurs in Judgment Only.**

**/jlr**