[Cite as *State v. Turpyn*, 2021-Ohio-1251.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020 CA 0059 |
| ROBB E. TURPYN | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
                             Court of Common Pleas, Case No.
                             2019CR56

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      April 9, 2021

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

GARY BISHOP                         R. JOSHUA BROWN
Prosecutig Attorney                 32 Lutz Avenue
38 South Park Street                Lexington, OH  44904
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Defendant-appellant Robb E. Turpyn ["Turpyn"] appeals from the January 8, 2020 Judgment Entry of the Richland County Court of Common Pleas that overruled his motion to suppress evidence.

*Facts and Procedural History*

{¶2} On September 12, 2019, Agent Thomas Payne with the United States Border Patrol was working with Trooper Matthew Manley of Ohio State Highway Patrol as part of a joint operation. The officers were parked in a marked SUV at a cross over near mile post 160 on I-71. T. at 45. The officers observed a 1980 Lindsay motor home approach and pass in the right- hand lane of the three- lane interstate highway. T. at 21; 45; 49. The officers noted that the driver of the motor home had his arms locking out, was facing forward and turning from the law enforcement officers as he passed. T. at 21; 45. The motor home was travelling at 65 M.P.H. in a 70 M.P.H. zone. T. at 45. The motor home had "dually" back tires. T. at 13. Both officers observed both of the back tires on the vehicle's passenger side cross over the white line. T. at 10; 12; 45; 49. Trooper Manley testified that he believed that this indicated the driver of the motor home was watching the police vehicle in his mirror as he passed. T. at 48-49. The officers then pulled out and got behind the motor home, observing at least three more marked lane violations as they began to follow him. T. at 11-12; 49. Trooper Manley followed the vehicle for approximately two minutes before activating his overhead lights and stopping the vehicle around mile marker 163.8 at 9:28 a.m. T. at 49; 53.

{¶3} Trooper Manley approached the motor home and noticed that there were two large dogs in the vehicle so he asked the driver, Turpyn, to exit the vehicle so they

would have an easier time talking. Turpyn got out of the vehicle and shook Trooper Manley's hand. Trooper Manley found this to be odd given how rarely motorists want to shake his hand in his eight years with the Ohio State Highway Patrol T. at 55. Trooper Manley noticed Turpyn's hands to be shaking uncontrollably which was indicative of nervousness. T. at 17-18, 54. Trooper Manley spoke to Turpyn about the marked lanes violations and Turpyn admitted to crossing over the line. T. at 55-56. Agent Payne also testified that Turpyn was shaking, trembling and uncommonly nervous. T. at 14; 18. Turpyn told Trooper Manley that he had been coming from several music festivals. T. at 55-56.

{¶4} Trooper Manley testified that he is a canine handler and that he had his canine partner with him in the police vehicle at the time of the stop. T. at 56-57. However, the accepted procedure of the Ohio State Highway Patrol is to call for another canine unit so as to allow the officer who made the stop to continue conducting the business of the traffic stop and not prolong the duration of the traffic stop. T. at 57. At 9:30 A.M. Trooper Manley radioed dispatch for a canine handler to come to the scene. T. at 56. Agent Payne asked Turpyn if he was in possession of anything illegal; Turpyn said no. T. at 18. Turpyn told Agent Payne that if a canine was deployed on his vehicle, that it would likely indicate because he had been around people who smoked marijuana. T. at 58-59.

{¶5} At 9:35 a.m. Trooper Shane Morrow arrived with his canine partner Hera. T. at 59. Trooper Morrow walked Hera around the motor home. Hera indicated on the door of the camper by "bracketing" on the door back and forth and pulling toward the door seam. T. at 101-102. Hera alerted by sitting down. Id. Trooper Manley then told Turpyn that the dog had alerted. Tr. at 61. Turpyn then said, "Let me cut to the chase," and went into his vehicle. T. at 18-19; 61. Turpyn then retrieved two marijuana pipes and a plastic container

and turned them over to Agent Payne. Id. A probable cause search of the vehicle revealed more drugs including cocaine, methamphetamine, and L.S.D.

{¶6}   On January 14, 2019, Turpyn was indicted in a nine-count indictment by the Richland County Grand Jury. Count One charged Turpyn with Trafficking in Cocaine, a felony of the first-degree in violation of R.C. 2925.03(A)(2) and (C)(4)(f). Count Two charged Turpyn with Possession of Cocaine, a felony of the first-degree in violation of R.C. 2925.11(A) and (C)(4)(e). Count Three charged Turpyn with Aggravated Trafficking in Drugs, a felony of the third-degree in violation of R.C. 2925.03(A)(2) and (C)(1)(c). Count Four charged Turpyn with Aggravated Possession of Drugs in violation of R.C. 2925.11(A) and (C)(1)(b), a felony of the third-degree. Count Five charged Turpyn with Trafficking in LSD in violation of R.C. 2925.11(A)(2) and (C)(5)(a), a felony of the fifth-degree. Count Six charged Turpyn with Possession of LSD in violation of R.C. 2925.11(A) and (C)(5)(a), a felony of the fifth-degree. Count Seven charged Turpyn with Trafficking in Hashish in violation R.C. 2925.03(A)(2) and (C)(7)(a), a felony of the fifth-degree. Count Eight charged Turpyn with Possession of Hashish in violation of R.C. 2925.11(A) and (C)(7)(a), a minor misdemeanor. Count Nine charged Turpyn with Possession of Drugs in violation of R.C. 2925.11(A) and (C)(2)(a), a misdemeanor of the first-degree.

{¶7}   On July 22, 2019, Turpyn filed a motion to suppress. On December 23, 2019 a hearing was held on the motion to suppress.

{¶8}   On December 31, 2019 Turpyn filed a Brief in Support of his Motion to Suppress and on January 3, 2020, Turpyn filed a Brief in Support of his Motion to Suppress Search.  The state's response was filed on January 6, 2020.  The trial court overruled Turpyn's motion to suppress by Judgment Entry filed January 8, 2020.

{¶9}     A change of plea hearing was held on July 8, 2020. Turpyn pled no contest to Count Two, Four, Six, Eight, and Nine. The remaining Counts were dismissed. On August 20, 2020, Turpyn was sentenced to a mandatory three years in prison. The sentence on all counts were run concurrent.

*Assignments of Error*

{¶10}   Turpyn raises two Assignments of Error,

{¶11}   "I. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE SEIZED AS THE RESULT OF AN UNREASONABLE STOP OF APPELLANT'S MOTOR HOME.

{¶12}   "II. THE K-9 ALERT USED TO JUSTIFY THE SEARCH OF APPELLANT'S MOTOR HOME IS NOT THE KIND OF "FAIR PROBABILITY" ON WHICH "REASONABLE PRUDENT PEOPLE ACT."

**STANDARD OF APPELLATE REVIEW – MOTION TO SUPRESS**

{¶13}   Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See, State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must

independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra*. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers."  *Ornelas, supra* at 698, 116 S.Ct. at 1663.

I.

{¶14}   In his First Assignment of Error Turpyn contends that the trial court erred by denying his motion to suppress and in finding that the officers had a reasonable articulable suspicion to stop him.

**ISSUE FOR APPEALLATE REVIEW:** ***Whether the officers had a reasonable articulable suspicion to conduct a traffic stop of Turpyn's vehicle.***

{¶15}   The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." The Fourth Amendment is enforced against the States by virtue of the due process clause of the Fourteenth Amendment of the United States Constitution.   *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The stop of a vehicle and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes.  *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59

L.Ed.2d 660 (1979), *citing United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

{¶16} In *State v. Mays*, 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4539, the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶ 15. The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving. Id. at syllabus.

{¶17} In *State v. Turner,* the Ohio Supreme Court held, "that the single solid white longitudinal line on the right-hand edge a roadway—the fog line—marks the edge of the roadway and that such a marking merely "discourages or prohibits" a driver from "crossing" it, not "driving on" or "touching" it." Oh. Sup. Ct. Case No. 2019-1674, 2020-Ohio-6773, 2020 WL 7501936(Dec. 22, 2020). ¶37. In other words, to constitute a marked lanes violation the vehicles' tires must "cross the single solid white longitudinal line—the fog line." Id., ¶ 35.

{¶18} In the case at bar, Agent Payne testified that he observed both of the motor home's rear dual tires cross over the white fog line. T. at 10-13. He observes two such violations. Id. Trooper Manley testified that he observed the right side tires of the motor home travel completely over the white line at least four times. T. at 45; 49. When questioned, Turpyn agreed that he had crossed over the white line. T. at 55-56.

{¶19}  In the case at bar, the trial court found the dash camera video of the traffic stop to be inconclusive on the issue of whether the motor home's tires had crossed over the white line. However, the trial court found Agent Payne and Trooper Manley to be credible and believable witnesses on this issue. In *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972(1992), the Ohio Supreme Court noted that the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress.  Id. at 366, 582 N.E.2d at 981-982. The court of appeals is bound to accept factual determinations the trial court made during the suppression hearing so long as they are supported by competent and credible evidence.

{¶20}  The dash cameras on Ohio State Highway Patrol vehicles only start saving recordings sixty seconds before the trooper activates their overhead lights. T. at 53. As Trooper Manley explained at the hearing, "The violations happened way before I even activated the lights. I was following the vehicle for quite a bit before I activated the lights. The violations could have been on the camera prior to the 60 seconds before going back." T. at 66.

{¶21}  In *State v. Mays*, 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4538, the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶ 15. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense

to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶ 17.

{¶22} Trooper Manley and Agent Payne's testimony is sufficient competent, credible evidence to support the trial court's determination, despite the video not conclusively establishing the marked lanes violation. Further, Turpyn himself admitted to the officers that he had crossed over the white line.

{¶23} Turpyn's First Assignment of Error is overruled.

II.

{¶24} In his Second Assignment of Error, Turpyn first challenges the canine sniff around the exterior of his motor home conducted by Trooper Shane Morrow and his dog Hera. Turpyn argues that two large dogs were inside the motor home during the walk around by Trooper Morrow and Hera. Turpyn contends that because the state failed to offer documentation showing that Hera had been trained on animal distractions during the dog's walk around the officers lacked probable cause to search the motor home.

**ISSUE FOR APPEALLATE REVIEW: *Whether the officers had probable cause to search the motor home.***

{¶25} In the case at bar, Turpyn stipulated to Hera's certification and training. T. at 7. The use of a drug detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. *See Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005); *United States v. Place*, 462 U.S. 696, 707, 103

S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983); *State v. Carlson*, 102 Ohio App.3d 585, 594, 657 N.E.2d 591 (9th Dist. 1995); *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir.1993). Further, if a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband. *United States v. Reed*, 141 F.3d 644 (6th Cir. 1998), (*quoting United States v. Berry*, 90 F.3d 148, 153 (6th Cir. 1996), *cert. denied* 519 U.S. 999, 117 S.Ct. 497, 136 L.Ed.2d 389 (1996)); *accord, United States v. Hill*, 195 F.3d 258, 273 (6th Cir.1999); *United States v. Diaz,* 25 F.3d 392, 394 (6th Cir. 1994); *State v. French*, 104 Ohio App.3d 740, 663 N.E.2d 367 (12th Dist. 1995), *abrogated on different grounds, City of Dayton v. Erickson, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996).*

**{¶26}** In the case at bar, after Hera had alerted on the motor home, Turpyn declared to Agent Payne, "Let me cut to the chase. I'll give you what I have." T. at 19. Turpyn then retrieved a brown case from the motor home and handed it to Agent Payne. Id. The case contained an electric pipe and blue plastic container that contained a brown substance." Id. Trooper Manley testified that after he informed Turpyn that Hera had alerted on the motor home, Turpyn went inside the motor home and retrieved two marijuana pipes and a small plastic container and handed those items to Agent Payne. T. at 61.

**{¶27}** The drugs and drug abuse instruments voluntarily retrieved by Turpyn and given to the officers provided the officers with probable cause to search the vehicle for contraband. No search of the motor home took place before Turpyn handed those items to the officers. Further, the fact that Turpyn handed suspected drugs and pipes used to

smoke drugs to the officers demonstrates that Hera was not distracted by the presence of the two dogs inside the motor home.

{¶28} Turpyn next purports to argue that the traffic stop was unconstitutionally extended beyond the time necessary to issue a traffic citation, and as a result the evidence found must be suppressed. The state correctly points out that this argument was first raised in Turpyn's *Brief on Motion to Suppress Regarding Search,* filed January 3, 2020 {Docket No. 61]. Further in the trial court's entry overruling Turpyn's Motion to Suppress, the trial court stated, ""It does not appear that the defendant is arguing that the traffic stop was extended beyond what was necessary to complete the traffic stop in order to conduct the dog sniff." *Judgment Entry Overruling Defendant's Motion to Suppress and State's Motion to Quash,* filed January 8, 2020 at 2. [Docket Number 63].

{¶29} "It is well-settled law that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived." *Columbus v. Ridley,* 2015-Ohio-4968, 50 N.E.3d 934, ¶ 28 (10th Dist.), *quoting State v. Barrett*, 10th Dist. Franklin No. 11AP-375, 2011-Ohio-4986, 2011 WL 4489169, ¶ 13; *see State v. Comen,* 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990). This "well-settled law" applies to arguments not asserted either in a written motion to suppress or at the suppression hearing. Id., citing *State v. Johnson*, 10th Dist. Franklin No. 13AP-637, 2014-Ohio-671, 2014 WL 746657, ¶ 14; *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, 2015 WL 1005336, ¶ 9; *State v. Perkins*, 9th Dist. Summit No. 21322, 2003-Ohio-3156, 2003 WL 21396699, ¶ 13; *State v. Molk*, 11th Dist. Lake No. 2001-L-146, 2002-Ohio-6926, 2002 WL 31813021, ¶ 11. Turpyn cannot, therefore, prevail on this issue unless he establishes plain error. "[A]n appellate court may, in its discretion, correct

an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 130 S.Ct. 2159, 176 L.Ed.2d 1012(2010) (internal quotation marks and citations omitted). *See, also, State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). (To show plain error, the defendant must show that (1) there was an error, (2) the error was "plain," i.e., obvious, and (3) the error affected substantial rights).

**ISSUE FOR APPEALLATE REVIEW:** *Whether the lawful detention for the traffic infraction became an unlawful detention when the officer decided to call for the use of a narcotics-detection dog to sniff around exterior of the vehicle.*

{¶30} A dog sniff is a measure aimed at "detect[ing] evidence of ordinary criminal wrongdoing." *Indianapolis v. Edmond*, 531 U.S. 32, 40–41, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). *See also, Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 1416–1417, 185 L.Ed.2d 495 (2013). "Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." *Rodriguez v. United States,* 575 U.S. 348, 356, 135 S.Ct. 1609, 191 L.Ed.2d 492(2015). Further, a dog sniff cannot be justified on the basis of officer safety. Highway and officer safety are interests different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular. *Rodriguez v. United States,* 575 U.S. at 356-357, 135 S.Ct. 1609, 191 L.Ed.2d 492. "The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket…but whether conducting the

sniff 'prolongs'—i.e., adds time to—'the stop'…." . *Rodriguez v. United States,* 575 U.S. at 357, 135 S.Ct. 1609, 191 L.Ed.2d 492.

{¶31}  In the case at bar, Turpyn's motor home was stopped at 9:28 A.M. T. at 56. Trooper Manley radioed for a canine unit at 9:30 A.M. Id. The Trooper arrived with the canine at 9:35 A.M.  T. at 59.  Hera alerted to the motor home at 9:38 A.M. T. at 83. At 9:41 A.M. Turpyn voluntarily hands the officers two pipes and a plastic container that he had retrieved from inside the motor home. T. at 83.

{¶32}  There is no evidence in the record that Trooper Manley could have completed writing the traffic citations before 9:35 A.M.  Nor is there evidence that Trooper Manley could have completed issuing the traffic citations before 9:38 A.M., the time that the canine alerted on the motor home, or by 9:41 A.M. the time Turpyn presented the officers with the contraband.

{¶33}  No violation of Turpyn's Fourth Amendment rights has been demonstrated. Therefore, we find the trial court correctly denied Turpyn's motion to suppress evidence.

{¶34}  Turpyn's Second Assignment of Error is overruled.

{¶35}  The Judgment of the Richland County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, John, J., and

Delaney, J., concur